# Illinois Official Reports

## Appellate Court

---

### *Ritacca Laser Center v. Brydges*, 2018 IL App (2d) 160989

---

| | |
|---|---|
| Appellate Court Caption | RITACCA LASER CENTER, Plaintiff-Appellant, v. LOUIS BRYDGES, GEORGE RISEBOROUGH, BRYDGES RISEBOROUGH, and O'HARE ENGINEERING, Defendants (O'Hare Engineering, Defendant-Appellee). |
| District & No. | Second District<br>Docket No. 2-16-0989 |
| Filed | February 13, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 12-L-655; the Hon. Margaret J. Mullen and the Hon. Michael J. Fusz, Judges, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Thomas W. Gooch III and Sabina D. Walczyk, of The Gooch Firm, of Wauconda, for appellant.<br><br>Kent Maynard Jr. and Joel Benton Daniel, of Kent Maynard & Associates LLC, of Chicago, for appellee. |
| Panel | JUSTICE McLAREN delivered the judgment of the court, with opinion.<br>Justices Jorgensen and Spence concurred in the judgment and opinion. |

¶ 1     Plaintiff, Ritacca Laser Center, appeals the trial court's summary judgment in favor of defendant, O'Hare Engineering, in this case involving a fire that occurred after defendant installed HVAC systems in plaintiff's office building. Plaintiff argues that the trial court erred by granting summary judgment in favor of defendant and striking affidavits attached to plaintiff's response to defendant's motion for summary judgment. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3     On October 7, 2013, plaintiff, a medical service provider, filed a two-count third amended complaint (complaint). Count I asserted legal malpractice against plaintiff's lawyers; that claim was dismissed and is not part of this appeal. Count II, pertinent to this appeal, asserted negligence against defendant as follows. In June 2008, plaintiff entered into a contract for Ryan, Inc. (Ryan), to construct improvements to remodel plaintiff's basement into a surgical suite. Ryan hired defendant to design, furnish, and install HVAC systems in plaintiff's office building. In December 2008, a few days after the grand opening of plaintiff's remodeled office building, a fire broke out, and an investigation suggested that defendant installed an air filter "too close" to an electric heating coil. Plaintiff alleged that, due to defendant's negligence, plaintiff was unable to work out of its office building for three years, which resulted in lost business income and property damage. Plaintiff tendered its claim to its insurance carrier, Erie Insurance (Erie), and plaintiff settled with Erie, but the settlement did not cover all of plaintiff's lost business income. Plaintiff attached to its complaint the construction contract between it and Ryan, which, in article 14, contained the following relevant provisions:

"(b) Builders Risk Insurance.

    (i) Owner [(plaintiff)] shall purchase and maintain, until the date of Substantial Completion, 'all-risk' builder's risk insurance covering the Project risk associated with such deductible [*sic*] shall be borne entirely by Owner. ***

                                    * * *

    (c) Waiver of Subrogation. Owner [(plaintiff)] and Design-Builder [(Ryan)] waive all rights against each other, and against their respective agents, employees and subcontractors, for damages caused by perils covered by the insurance to be maintained pursuant to Paragraph 14(b) hereof, except such rights as they may have to the proceeds of such insurance. If, during the Project construction period, the Owner insures properties, real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project, or if after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights against the Design-Builder, and against its respective agents, employees and subcontractors, for damages caused by perils covered by this separate property insurance."

¶ 4     On October 9, 2015, defendant moved for summary judgment, asserting additional facts and arguing the following. When plaintiff tendered its claim to Erie, it acknowledged that its policy covered both property damage and related business-interruption losses caused by the fire. When Erie refused to pay the amount of loss plaintiff claimed, plaintiff sued Erie in

August 2009. In the course of litigation, plaintiff and Erie produced widely disparate calculations of plaintiff's business-interruption damages. Plaintiff claimed that its business-interruption losses were $6.3 million whereas Erie's expert opined that plaintiff's business-interruption losses were only $1.5 million. By June 2011, plaintiff and Erie had agreed on the amount of the property losses but not the business-interruption losses. After mediation on the matter, plaintiff agreed to release all of its business-interruption claims against Erie for $3.5 million. The total settlement amount for property damage and business interruption was over $4 million. After the settlement, plaintiff learned that Erie did not intend to bring a subrogation action against defendant because Erie's legal counsel opined that plaintiff's fire-related property damage and business-interruption losses were caused by a "peril" covered by the Erie policy and, therefore, subrogation was barred by the waiver in the construction contract. Defendant argued that plaintiff's claim could not proceed because it waived any claims against defendant in the construction contract and plaintiff's lawsuit against defendant was frivolous.

¶ 5    In support of its motion for summary judgment, defendant attached the following documents: (1) plaintiff's complaint against defendant, along with the attached construction contract, and (2) plaintiff's complaint against Erie. In the latter, plaintiff alleged that its policy provided it with, *inter alia*, "insurance coverage for what is commonly referred to as business interruption ***. The Policy was in full force and effect at all time material hereto [namely] The Fire Loss ***." Plaintiff also alleged that "Erie promised to pay income protection loss for the shorter of 1. The time period required to build, repair, or replace such part of the building or business personal property as has been damaged or destroyed as a result of a peril; or 2. Twelve (12) consecutive months from the date of the loss." Also attached to defendant's motion were the following: (1) a letter from an Erie representative indicating that, on the date of the fire, as indicated by the enclosed declarations, plaintiff was covered for "Business Personal Property [and] Income," (2) the settlement agreement between plaintiff and Erie, (3) Erie's counsel's letter stating that "the subrogation waiver cannot be overcome," and (4) Erie's declaration of coverage indicating that plaintiff was covered for personal property damage and income loss.

¶ 6    In opposition to defendant's motion for summary judgment, plaintiff asserted that the waiver of subrogation contained in paragraph 14(c) of the construction contract applied only to "damages caused by perils covered by insurance required under [paragraph] 14(b). *** Further, [a]rticle 14[b] discussed builder's Risk Insurance, stating that [plaintiff] shall purchase this insurance, [and it clearly applied] only to property damage. *** In fact, [plaintiff] did not purchase the Builders Risk Insurance but instead purchased a commercial package policy which included income loss, not required under Article 14." The construction contract could "be construed as ambiguous because [it] does not specify that income loss is part of the builders['] risk. *** Therefore[,] *** the Court should construe the terms in the light most favorable to the insured, [plaintiff]."

¶ 7    In support of plaintiff's response to defendant's motion for summary judgment, plaintiff attached the following: (1) the construction contract; (2) Erie's insurance documents; (3) the affidavit of Eric Routman, an attorney, who opined, in pertinent part, that paragraph 14(b) of the construction contract required plaintiff to obtain property insurance, commonly referred to as builders' risk insurance, and that the waiver of subrogation in paragraph 14(c) was "limited to damages caused by perils covered by [insurance] required by [paragraph] 14(b)"; (4) the affidavit of Brian Paquette, plaintiff's insurance broker, who stated that he did not issue a

builders' risk policy to plaintiff; and (5) the affidavit of Daniel Ritacca, M.D., plaintiff's principal, who stated that he did not obtain a builders' risk policy but, instead, purchased a commercial package policy that included income-loss insurance, and income loss is not part of a builders' risk policy.

¶ 8    Defendant moved to strike the three affidavits attached to plaintiff's response on the basis that the affidavits were insufficient under Illinois Supreme Court Rule 191 (eff. Jan. 4, 2013).

¶ 9    On January 26, 2016, after a hearing on the matter, the trial court granted defendant's motion to strike plaintiff's affidavits and granted plaintiff leave to file affidavits compliant with Rule 191 no later than seven days prior to the hearing on defendant's motion for summary judgment. Plaintiff failed to file amended affidavits.

¶ 10    On February 9, 2016, after hearing argument on defendant's motion for summary judgment, the trial court granted defendant's motion and granted defendant leave to file a motion seeking to recover fees and costs from plaintiff by March 1, 2016. On March 2, 2016, defendant filed a motion for sanctions against plaintiff pursuant to Illinois Supreme Court Rule 137 (eff. July 1, 2013). On March 4, 2016, plaintiff filed a notice of appeal. However, because plaintiff's notice of appeal was premature due to defendant's pending motion for sanctions, plaintiff withdrew its appeal. On November 3, 2016, after hearing arguments by counsel, the trial court denied defendant's motion for sanctions. On November 22, 2016, plaintiff filed its notice of appeal.

¶ 11                                    II. ANALYSIS
¶ 12                                A. Summary Judgment
¶ 13    Plaintiff argues that the trial court erred by granting summary judgment in defendant's favor because it improperly interpreted the waiver of subrogation contained in the construction agreement.

¶ 14    Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2014). The trial court may grant summary judgment after considering "the pleadings, depositions, admissions, exhibits, and affidavits on file in the case" and construing that evidence in favor of the nonmoving party. *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986). Summary judgment aids in the expeditious disposition of a lawsuit but should be allowed only "when the right of the moving party is clear and free from doubt." *Id.* We review *de novo* a trial court's decision to grant summary judgment. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 15    The interpretation of a contract presents a question of law subject to *de novo* review in accordance with the general rules applicable to contract interpretation. *Gallagher v. Lenart*, 226 Ill. 2d 208, 219 (2007). We construe a clear and unambiguous contract as a matter of law. See *Storino, Ramello & Durkin v. Rackow*, 2015 IL App (1st) 142961, ¶ 18. Our primary goal in interpreting a contract is to give effect to the intent of the parties. *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011). When the words in the contract are clear and unambiguous, they must be given their plain, ordinary, and popular meaning. *Id.* If the language of the contract is susceptible to more than one reasonable meaning, it is ambiguous and a court can consider extrinsic evidence to determine the parties' intent. However, the parties' disagreement on the meaning of a contract term does not, by itself, render that term ambiguous. *Id.* at 443. Rather,

ambiguity arises only when the language has more than one reasonable interpretation. *Nicor, Inc. v. Associated Electric & Gas Insurance Services Ltd.*, 223 Ill. 2d 407, 417 (2006).

¶ 16    Plaintiff argues that summary judgment was improper because (1) the construction contract applied to property damage only and not to business-income loss, (2) plaintiff did not purchase "builder's risk insurance" as required by article 14, but instead plaintiff purchased a commercial package policy that covered income loss, which was not required by article 14, and (3) the construction contract is ambiguous in that it does not specify that income loss is part of the builder's risk, and thus it should be interpreted in plaintiff's favor as it is the insured.

¶ 17    Defendant argues that the trial court properly granted summary judgment in its favor because the relevant provisions of the construction contract unambiguously apply to the damages incurred by plaintiff. We agree with defendant.

¶ 18    Paragraph 14(c) provided the following:

> "Waiver of Subrogation. Owner [(plaintiff)] and Design-Builder [(Ryan)] waive all rights against each other, and against their respective agents, employees and subcontractors, for damages caused by *perils covered by the insurance* to be maintained pursuant to Paragraph 14(b) hereof, except such rights as they may have to the proceeds of such insurance. If, during the Project construction period, the Owner insures properties, real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project, or if after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights against Design-Builder, and against its respective agents, employees and subcontractors, for damages caused by *perils covered by this separate property insurance*." (Emphases added.)

Paragraph 14(b)(i) provided, in part:

> "Owner [(plaintiff)] shall purchase and maintain, until the date of Substantial Completion, 'all-risk' builder's risk insurance covering the Project."

¶ 19    Plaintiff's interpretation of the waiver of subrogation renders the second sentence of paragraph 14(c) meaningless. The Erie insurance endorsement and the insurance policy attached to plaintiff's response to defendant's motion for summary judgment indicate that plaintiff was covered by an "Ultrapack Business Policy" that was in effect at the time of the fire and covered property damage *and* income loss. The name of the policy is irrelevant because under paragraph 14(c) the waiver applied to claims "for damages caused by *perils covered by this separate property insurance.*" Thus, plaintiff's argument that the waiver did not apply, because it bought a commercial policy, fails. Under either policy, the peril of fire was covered by insurance. The nature and extent of the damages insured are immaterial because it is the peril covered and not the type of damages that sustains the waiver.

¶ 20    We now address plaintiff's concomitant arguments that the construction contract applied to property damage only and not business-income loss and that the contract is ambiguous because it does not specifically list income loss. We reject both arguments.

¶ 21    The waiver expressly covered "damages caused by perils." The dictionary definition of "damage" does not support plaintiff's argument. Damage is defined as "loss due to injury" (Webster's Third New International Dictionary 571 (1993)) and loss or injury to person or property (Black's Law Dictionary 416 (8th ed. 2004)). These definitions are broad and

implicitly include loss of business income. To the extent that the waiver does not enumerate different types of damages that could result from a peril, "it purports only to be inclusive, not preclusive." *Intergovernmental Risk Management v. O'Donnell, Wicklund, Pigozzi & Peterson Architects, Inc.*, 295 Ill. App. 3d 784, 795-96 (1998). Nothing in the language of the waiver indicates that the parties intended an exception for loss of business income. We will not add terms to a contract to change the plain meaning, as expressed by the parties. See *Empress Casino Joliet Corp. v. W.E. O'Neil Construction Co.*, 2016 IL App (1st) 151166, ¶ 62; see also *Berryman Transfer & Storage Co. v. New Prime, Inc.*, 345 Ill. App. 3d 859, 863 (2004) ("Illinois recognizes a strong presumption against provisions that easily could have been included in a contract but were not."). Thus, applying the plain and ordinary meaning of the term damages to article 14 of the construction contract, we determine that it clearly and unambiguously included loss of business income. Therefore, the trial court properly granted summary judgment in defendant's favor.

¶ 22                                                    B. Affidavits

¶ 23         Plaintiff argues that the trial court improperly struck the affidavits of Routman, Paquette, and Ritacca. According to plaintiff, the affidavits complied with Illinois Supreme Court Rule 191 (eff. Jan. 4, 2013).

¶ 24         The record on appeal, however, does not include a transcript of the hearing on the motion to strike or a substitute in compliance with Illinois Supreme Court Rule 323 (eff. July 1, 2017). An appellant has the burden of presenting a sufficiently complete record of the proceedings to support a claim of error. In the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with the law. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984). Without an adequate report of the proceedings showing the basis for the trial court's ruling on the motion to strike, we must presume that its decision was appropriate. *Id.* at 391-92; see also *Preze v. Borden Chemical, Inc.*, 336 Ill. App. 3d 52, 56 (2002) (absent a complete record on appeal, the appellate court must assume that the trial court's order was correct and had a sufficient factual basis). The trial court's reasoning aside, the affidavits would not have affected our interpretation of article 14 of the construction contract; therefore, they would have had no impact on our determination that the trial court properly granted summary judgment in favor of defendant.

¶ 25                                                 C. Local Rule 2-1.04

¶ 26         Plaintiff argues that the trial court erred by granting summary judgment in defendant's favor when defendant failed to attach to its motion a statement of uncontested material facts pursuant to Nineteenth Judicial Circuit Court Rule 2-1.04, formerly local rule 2.04. 19th Judicial Cir. Ct. R. 2-1.04 (Oct. 24, 2016). Plaintiff also contends that, when defendant finally submitted its statement of material facts, it was not in compliance because the statements were in the form of a chart rather than short paragraphs and were not numbered. Based on the trial court's inherent power to control its docket, it has discretion whether to impose sanctions for violating local rules. *VC&M, Ltd. v. Andrews*, 2013 IL 114445, ¶ 26.

¶ 27         Local rule 2-1.04 governs motions for summary judgment and provides in pertinent part:

             "A. In all filings pursuant to 735 ILCS 5/2-1005, the moving party shall serve and
                file:

* * *

3. a statement of material facts as to which the moving party contends there is no genuine issue and that entitles the moving party to a Judgment as a matter of law ***[.]

* * *

The statement referred to in Section (A)(3) shall consist of short numbered paragraphs, including within each paragraph specific references to affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a statement constitutes grounds for denial or striking of the Motion." 19th Judicial Cir. Ct. R. 2-1.04(A) (Oct. 24, 2016).

¶ 28 Here, defendant initially violated the local rule by failing to attach a statement of material facts when it filed its motion for summary judgment. However, as directed by the trial court, defendant subsequently submitted its statement of material facts. We cannot say that the trial court abused its discretion by allowing defendant to submit the statement of facts after it filed its motion for summary judgment.

¶ 29 Further, plaintiff has failed to indicate how defendant's alleged failure to comply with the technical aspects of local rule 2-1.04(A) caused plaintiff any prejudice or surprise. Accordingly, we cannot say that the trial court abused its discretion by not denying defendant's motion for summary judgment as a sanction for failing to comply with the local rule. See *VC&M*, 2013 IL 114445, ¶ 27 (holding that the trial court did not abuse its discretion by failing to sanction a party for a violation of a local rule where the opposing party did not claim prejudice).

¶ 30 III. CONCLUSION

¶ 31 For the reasons stated, we affirm the trial court's order.

¶ 32 Affirmed.