# Illinois Official Reports

## Appellate Court

---

### *Wood v. Evergreen Condominium Ass'n*, 2021 IL App (1st) 200687

---

| | |
|---|---|
| Appellate Court Caption | DOMINI WOOD, Plaintiff-Appellant, v. EVERGREEN CONDOMINIUM ASSOCIATION and BRAD TERCEK, Defendants-Appellees. |
| District & No. | First District, Third Division<br>No. 1-20-0687 |
| Filed | July 7, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 19-L-12563; the Hon. Michael Otto, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Shorge Sato, of Shoken Legal, P.C., of Chicago, for appellant.<br><br>Brandon R. Wilson, of Kovitz Shifrin Nesbit, of Mundelein, for appellees. |
| Panel | JUSTICE BURKE delivered the judgment of the court, with opinion.<br>Justices McBride and Ellis concurred in the judgment and opinion. |

¶ 1 Plaintiff, Domini Wood, filed a complaint for declaratory judgment and breach of fiduciary duty against defendants, Evergreen Condominium Association (Association) and Brad Tercek, after defendants prohibited Wood from operating her residential condominium unit as a short-term rental on the website Airbnb.com (Airbnb). Defendants filed a motion to dismiss pursuant to section 2-615 of the Code of Civil Procedure (the Code) (735 ILCS 5/2-615 (West 2018)), contending that the Association's "Declaration of Condominium" (Declaration) barred short-term rentals. The circuit court agreed and granted the motion to dismiss. Wood appeals, asserting that the circuit court misconstrued the Declaration. For the reasons that follow, we affirm.

¶ 2 I. BACKGROUND

¶ 3 The following facts are gleaned from Wood's first amended complaint, which we must take as true for purposes of a motion to dismiss under section 2-615 of the Code. *Ward v. Mid-American Energy Co.*, 313 Ill. App. 3d 258, 259 (2000); *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, ¶ 18.

¶ 4 Wood is the sole beneficiary of a trust that owns unit 3 at 1340 N. Park Avenue in Chicago, Illinois. The deed was recorded on April 15, 2019. The unit is part of a 12-unit condominium building (Property) that was formed in 1995 by the filing of its Declaration and bylaws. It is overseen by the Association. Tercek is vice president and acting president of the board of managers (Board) of the Association.

¶ 5 Wood was initially president of the Association starting on May 6, 2019. However, a dispute arose regarding her use of her unit as a short-term rental on Airbnb. In November 2019, defendants' attorneys issued Wood a notice of violation for operating her unit as a short-term rental in violation of the condominium's governing instruments. On December 18, 2019, the Board met and voted to remove Wood as Association president. In addition, the Board voted to place the Association on the City of Chicago's "Prohibited Buildings List," which effectively bans all Airbnb activity at the Property on grounds that the Association's Declaration or bylaws prohibit short-term rentals.

¶ 6 In count I of her amended complaint, Wood sought a declaratory judgment that the Declaration and bylaws did not prohibit short-term rentals. Wood requested that the court (1) declare the November 2019 notice of violation invalid, (2) declare that placement of the condominium property on the "Prohibited Buildings List" was invalid, and (3) declare that unit owners may not be prohibited from using their units for short-term transient occupancy through Airbnb. In count II, Wood sought damages for breach of fiduciary duty in that defendants owed a duty to strictly comply with the Declaration and bylaws and because neither restrict short-term rentals; defendants breached this duty by issuing the notice of violation and placing the property on the Prohibited Buildings List.

¶ 7 Defendants filed a motion to dismiss under section 2-615 of the Code, arguing that section 7 of the Declaration prohibits leases of less than 30 days' duration: "no Unit shall be leased, subleased or assigned for a period of less than thirty (30) days." Defendants further asserted that her actions were barred by section 11(b) of the Declaration, which prohibits any "business" being conducted on the Property: "No industry, business, trade, occupation or profession of

any kind, commercial, religious, educational or otherwise, designed for profit, altruism, exploration or otherwise shall be conducted, maintained, or permitted on any part of the Property."

¶ 8    In response, Wood asserted that section 7 of the Declaration prohibits leases of less than 30 days duration, but a short-term rental through Airbnb was not a "lease"; rather, it was a temporary, revocable "license" under Airbnb's terms of service. Wood noted that Airbnb's terms of service provided that

> "You understand that a confirmed booking of an Accommodation ('Accommodation Booking') is a limited license granted to you by the Host to enter, occupy and use the Accommodation for the duration of your stay, during which time the Host *** retains the right to re-enter the Accommodation, in accordance with your agreement with the Host."

¶ 9    Wood also contended that her short-term rental activity was not barred by section 11(b) of the Declaration because use of a unit to host guests for residential purposes did not constitute a "commercial" use of a unit any more so than leasing the same unit to a tenant for a longer term constituted "commercial" use of a unit. Wood also argued that the short-term rental of her unit on Airbnb was not being conducted "on the Property." Rather, it occurred over the Internet. Wood additionally argued that section 4(b) of the Declaration provided guests of unit owners with the same rights as the owners to use the units and common elements of the condominium: "each Unit Owner, his agents, permitted Occupants, family members and invitees shall have the right to use the Common Elements for all purposes incident to the use and occupancy of his Unit as a place of residence and such other incidental uses permitted by the Condominium Instruments."

¶ 10   On April 8, 2020, the circuit court entered a written order granting defendants' motion to dismiss. In interpreting section 7, the court found that (1) it did not prohibit "licensing" of a unit; (2) it must assume that Wood granted her short-term guests merely licenses to occupy her property, not leases; and (3) it must construe the restrictive covenant narrowly. However, the trial court concluded that section 11(b) prohibited Wood's use of her unit as a short-term rental because she was conducting "business" "on any part of the Property." The court reasoned that section 11(b) creates a general prohibition on income-generating activities on the Property, while section 7 provides a narrow exception for long-term leases. It also found section 4 inapplicable, as it merely provided that unit owners and their invitees are permitted to use the common elements of the condominium. Wood filed a timely notice of appeal.

¶ 11                                          II. ANALYSIS
¶ 12                                       A. Standard of Review
¶ 13   We review the circuit court's decision on a motion to dismiss under section 2-615 of the Code *de novo*. *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361 (2009). A section 2-615 motion challenges the legal sufficiency of a complaint on its face. *Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 15. Under this section, "the critical question is whether the allegations in the complaint, construed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted." *Id.* ¶ 16. In evaluating this question, we must take all well-pleaded facts as true. *Id.* We should dismiss a complaint under section 2-615 "only where no set of facts can be proved which would entitle the plaintiff to recovery." *Id.*

¶ 14 This case also requires us to interpret the terms of the Association's Declaration; construction of clear and unambiguous contractual language is a matter of law subject to *de novo* review. See *Lease Management Equipment Corp. v. DFO Partnership*, 392 Ill. App. 3d 678, 684 (2009). On review, we observe that "we may affirm on any grounds in the record, regardless of whether the trial court relied on those grounds or whether the trial court's reasoning was correct." *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 24.

¶ 15                                B. Section 7 of the Declaration

¶ 16 The parties' dispute centers primarily on sections 7 and 11 of the Declaration, and we thus begin by construing the language of those provisions.

¶ 17 A declaration of condominium serves as "the contract between the association and the unit owners governing the operation of the condominium property and association and sets forth the board's duties related to management of the property and association." *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2014 IL App (1st) 111290, ¶ 75. "Where a unit owner's rights must be determined, the Act, the declaration, and the bylaws must be construed as a whole." *Alliance Property Management, Ltd. v. Forest Villa of Countryside Condominium Ass'n*, 2015 IL App (1st) 150169, ¶ 27.

¶ 18 "We interpret condominium declarations according to the principles of contract interpretation." *Stobe v. 842-848 West Bradley Place Condominium Ass'n*, 2016 IL App (1st) 141427, ¶ 13. The primary goal of such interpretation is to give effect to the parties' intent; in so doing, we must interpret the Declaration as a whole and apply the plain, ordinary meaning of unambiguous terms in the contract. *Id.*; *Palm*, 2014 IL App (1st) 111290, ¶ 75. "[T]he parties' disagreement on the meaning of a contract term does not, by itself, render that term ambiguous. [Citation.] Rather, ambiguity arises only when the language has more than one reasonable interpretation." *Ritacca Laser Center v. Brydges*, 2018 IL App (2d) 160989, ¶ 15.

¶ 19 Our court has determined that "an Illinois condominium association may prohibit the leasing of units either by board action or by a vote of the entire association pursuant to the terms of the condominium declaration." *Apple II Condominium Ass'n v. Worth Bank & Trust Co.*, 277 Ill. App. 3d 345, 352 (1995). Generally, a restriction that is part of a condominium declaration is presumed valid and will be upheld "unless it can be shown that the restriction is arbitrary, against public policy or violates some fundamental constitutional right of the unit owners." *Id.* "A higher level of deference is necessary when courts review decisions made by self-governing bodies such as condominium associations." *Id.* at 350. Restrictions that are found in the declaration of the condominium itself are "clothed in a very strong presumption of validity." *Id.*

¶ 20 Further, in construing a restrictive covenant, our primary goal is to give effect to the actual intent of the parties, considering the entire document. *Fick v. Weedon*, 244 Ill. App. 3d 413, 417 (1993). If the language of the covenant is unambiguous, clear, and specific, the "[r]estrictions should be given the effect which the express language of the covenant authorizes." *Id.* "While doubts and ambiguities in the covenant should be resolved in favor of natural rights and against restrictions [citation], this generalization cannot be used to ignore or override the specific language of a restrictive covenant." *Id.* "[A] covenant restricting the use of property for residential purposes is valid and will be enforced where the intent of the drafter to impose the restriction is clearly manifested." *400 Condominium Ass'n v. Gedo*, 183 Ill. App. 3d 582, 584 (1989).

¶ 21      With these principles in mind, we turn to Wood's first argument on appeal. She does not challenge the restrictive covenant in section 7 on grounds that it is arbitrary, against public policy, or violates a fundamental right. See *Apple II Condominium*, 277 Ill. App. 3d at 352. Rather, she contends that the plain language of the restriction clearly prohibits only leases of less than 30 days and not licenses. She maintains that under Airbnb's terms of service, she provided her guests with only a license to use her unit.

¶ 22      Section 7 of the Declaration provides in part:

> "7. Lease of Units or Sublease or Assignment of Lease Thereof. Subject to Paragraph 3, any Unit Owner shall have the right to lease, or permit a subsequent sublease or assignment of all (but not less than all) of his Unit upon such terms and conditions as the Unit Owner may deem acceptable, except that no Unit shall be leased, subleased or assigned for a period of less than thirty (30) days."

¶ 23      According to Wood, section 8.2.1. of Airbnb's terms of service provide her guests with only a "license" to use her unit, not a lease. We note that it appears Airbnb has since modified its terms of service since this case began, and the pertinent provision now appears in section 2.3: "An Accommodation reservation is a limited license to enter, occupy, and use the Accommodation. The Host retains the right to re-enter the Accommodation during your stay, to the extent: (i) it is reasonably necessary, (ii) permitted by your contract with the Host, and (iii) consistent with applicable law." *Terms of Service*, Airbnb, http://www.airbnb.com/help/article/2908/terms-of-service (last visited June 29, 2021) [https://perma.cc/5YY4-JU25].

¶ 24      Defendants argue that the distinction between a lease and a license may be relevant to the relationship between Wood and her guests, but, as it relates to the Association, she is engaging in the same prohibited behavior, regardless of whether it is labeled a license or a lease. Defendants argue that the Declaration was intended to prohibit short-term occupancy such as at issue here. Defendants contend that the plain meaning of the word "lease" in section 7 was clearly meant to encompass arrangements such as Wood's with her short-term renters.

¶ 25      The Declaration does not define the word "lease." However, as this court has found, "[w]hether measured by their common and accepted usage or viewed as legal terms of art, 'lease' and 'license' are not synonyms." *North Avenue Properties, L.L.C. v. Zoning Board of Appeals of the City of Chicago*, 312 Ill. App. 3d 182, 191 (2000) (citing Webster's Third New International Dictionary 1286, 1304 (1993) (lease, license), and Black's Law Dictionary 889, 919-20 (6th ed. 1990) (lease, license)). Whether a contractual arrangement constitutes a lease or a license "is made by analyzing the legal effect of its provisions." *Id.* at 189.

> "A lease is a definite agreement as to the extent and bounds of the property demised and transfers exclusive possession thereof to the lessee. [Citation.] In contrast, a license agreement merely entitles a party to use the premises for a specific purpose, subject to the management and control retained by the owner." *Id.*

¶ 26      Here, Airbnb's terms of service provide that guests are given a "license" to the use of the host's unit. As the circuit court observed, the actual contracts or agreements between Wood and her guests were not provided to the court. Airbnb's terms of service provide that Airbnb is not a party to their contractual arrangement and the guest and host enter into a contract with each other, not with Airbnb.[1] As a result, the circuit court observed that it was unable to

---

[1] The circuit court cited "Airbnb.com/terms sec. 1.2 (Last accessed Apr. 3, 2020)," for this provision. However, it appears to have since been modified to section 5.2: "When you accept a booking

determine Wood's actual contractual relationship with her rental guests, and we face a similar problem on appeal. However, considering the procedural posture of this case, that is, on review from defendants' section 2-615 motion to dismiss, we must construe all allegations in the complaint in the light most favorable to the plaintiff. *Doe-3*, 2012 IL 112479, ¶ 16. Significantly, the terms of service provide the host with the right to reenter the unit during the stay. This supports that Wood's guests are, in fact, licensees and not lessees of the unit because they do not have exclusive possession. See *North Avenue Properties*, 312 Ill. App. 3d at 189. Viewing the terms of service and Wood's allegations in the complaint in the light most favorable to Wood, we must assume that Wood granted her guests a mere license to use her unit, not a lease.

¶ 27        The language of section 7 of the Declaration, by its clear and plain terms, prohibits "leases, subleases, and assignments" of less than 30 days. It does not specifically mention or prohibit "licenses" or licensing of a unit. Section 7 also does not specifically prohibit Airbnb-type arrangements or completely prohibit a unit owner from allowing another party to occupy his or her unit for pay. "We will not add terms to a contract to change the plain meaning, as expressed by the parties." *Ritacca Laser Center v. Brydges*, 2018 IL App (2d) 160989, ¶ 21. We decline to read into the Declaration the term "license," which is clearly not present under its plain language.

¶ 28        Additionally, we are mindful that restrictive covenants such as the one in section 7 are to be construed narrowly. "Covenants should be strictly construed so that they do not extend beyond that which is expressly stipulated; all doubts must be resolved in favor of the free use of property and against restrictions." *Neufairfield Homeowners Ass'n v. Wagner*, 2015 IL App (3d) 140775, ¶ 16. Accordingly, we find that section 7 does not bar Wood from the short-term licensing of her unit to guests.

¶ 29        Defendants urge that their construction of section 7 is supported by section 11(a), which states that the condominium units must be used as single-family residences. Section 11(a) is entitled, "Use and Occupancy of Units and Common Elements," and provides in relevant part:

> "(a) No part of the Property shall be used for other than housing and the related common purposes for which the property was designed. Each dwelling Unit or any two or more adjoining dwelling Units used together shall be used as a residence for a single family or such other uses permitted by this Declaration and for no other purposes."

¶ 30        We find that this provision does not support defendants' contention. The cited sentence from section 11(a) merely indicates that the units shall be used for single family residential housing or other permitted uses. At this stage in the proceedings, there is no indication that Wood was renting her unit out for any other purpose besides residential, albeit of a short duration.

¶ 31        Defendants further argue that interpreting section 7 to exclude licenses leaves the Association without recourse against a short-term renter or unit owner if there is damage to the

---

request, or receive a booking confirmation through the Airbnb Platform, you are entering into a contract directly with the Guest, and are responsible for delivering your Host Service under the terms and at the price specified in your Listing." *Terms of Service*, Airbnb, http://www.airbnb.com/help/article/2908/terms-of-service (last visited June 29, 2021) [https://perma.cc/5YY4-JU25]. The introductory paragraph to the terms of service, which is not enumerated, also states, "Airbnb is not a party to the contracts concluded directly between Hosts and Guests ***." *Id.*

Property or the renter violates other provisions of the Declaration. Section 7 provides that the Association has the right to file an action against the owner and lessee/sublessee/assignee for eviction or failure to abide by the rules in the Declaration and that the owner remains liable. However, assuming Wood merely provides her guests with a license to use her unit, the unit still remains subject to her control. See *North Avenue Properties*, 312 Ill. App. 3d at 189. There is no indication from Wood's complaint or Airbnb's terms of service that the Association would not otherwise be able to pursue Wood for violations of the Declaration.

¶ 32                                C. Section 11 of the Declaration

¶ 33        Wood next argues that the circuit court erred in construing section 11(b) of the Declaration to find that the plain meaning of the term "business" in this provision encompassed her short-term rental activity. She urges that this interpretation leads to an absurd result as it would prohibit any type of "business," even within an individual unit, such as ordering pizza, responding to work e-mails or telephone calls, or an owner listing his unit for sale.

¶ 34        As previously noted, section 11(b) provides in relevant part:

> "11. Use and Occupancy of Units and Common Elements. The Units and Common Elements shall be occupied and used as follows:
>
> ***
>
> (b) No industry, business, trade, occupation or profession of any kind, commercial, religious, educational or otherwise, designed for profit, altruism, exploration or otherwise shall be conducted, maintained, or permitted on any part of the Property."

¶ 35        The circuit court found that the only term in section 11(b) relevant to this case was "business." The Declaration does not define the term "business." Where terms are not defined in a contract, "we must afford them their plain, ordinary, and popular meanings." *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 366 (2006). In order to do so, we may consult dictionary definitions of a term. *Id.*

¶ 36        According to Merriam-Webster Dictionary, the term "business" is defined as "a usually commercial or mercantile activity engaged in as a means of livelihood," a "commercial or sometimes an industrial enterprise," and "dealings or transactions especially of an economic nature." Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/business (last visited June 24, 2021) [https://perma.cc/BQB3-BMMQ]. Certainly, Wood's dealings with her short-term renters, *i.e.*, providing use of her condominium unit in exchange for payment, constitutes "dealings or transactions especially of an economic nature." She is engaged in a business enterprise in that she is providing her short-term renters with a service and a product—use of her unit as an accommodation—in exchange for payment.

¶ 37        Wood argues that she was not conducting "business" on the Property because there is no indication that she is operating a "for-profit business" or that her primary purpose is to make a profit. She urges that federal tax law draws a distinction between a "business" and a "hobby" and she also cites a case from the Seventh Circuit Court of Appeals interpreting the term "trade or business" for purposes of the Employee Retirement Income Security Act of 1974 (29 U.S.C. § 2001 *et seq.* (2018)).

¶ 38        We find these arguments unavailing. The dictionary definition of the term "business" set forth above does not require that an activity be profitable or have the primary purpose of making a profit. Indeed, businesses are not always profitable. Wood's cited cases involving

the federal tax code or Employee Retirement Income Security Act of 1974 are inapplicable to the present matter, where we are tasked with interpreting the specific language of the governing contract between the Association and the unit owners—the Declaration.

¶ 39 As defendants and the circuit court emphasized, the City of Chicago imposes regulations on shared housing and "short term residential rental intermediaries and advertising platforms" similar to those imposed upon a hotel. Such regulations require that the rental be registered with the city and follow various operating requirements. See Chicago Municipal Code §§ 4-14-020, 4-14-040(b)(1)-(9) (amended Mar. 24, 2021). Chicago also imposes taxes on "vacation rental[s]" and "shared housing unit[s]" for short-term transient occupancy and requires that financial records must be kept. Chicago Municipal Code § 3-24-020(A)(4) (amended Nov. 21, 2017); Chicago Municipal Code § 3-24-030(A)-(C) (amended July 25, 2018); Chicago Municipal Code §§ 3-24-060, 3-24-070 (amended Nov. 16, 2011). This provides further evidence that Wood's rental of her unit to short-term guests in exchange for payment constitutes a "business" for purposes of section 11(b) of the Declaration.

¶ 40 Wood also maintains, in asserting that section 11(b) does not bar her short-term rental activity, that the clause, "on any part of the Property," in section 11(b) is limited to the common areas outside of the units. However, the term "Property" is specifically defined in section 1(r) of the Declaration as "[a]ll land, property and space comprising the Parcel." Section 1(u) of the Declaration defines a "Unit" as "[a]ny part of the Property designed and intended for any type of independent use." As such, "Property" refers to the entire condominium building, of which the individual condominium units are a part.

¶ 41 Along similar lines, Wood contends that she is not conducting business "on the Property" because she advertises her unit online and she is paid through the Airbnb website online. We disagree. That Wood accepts reservations from her renters on the Internet and receives payment over the Internet does not change the fact that the "business" at issue is the actual use of the unit itself, which necessarily occurs "on the Property."

¶ 42 Wood further contends that by adding the term "on the Property" to the first sentence of section 11(b), the drafter of the Declaration intended to make clear that it is meant to apply only to "physical manifestations" of "industry, business, trade, occupation or profession." She reasons that the second sentence of section 11(b) makes this intention clear. The second sentence provides, "No 'For Sale' or 'For Rent' signs, advertising or other displays shall be maintained or permitted on any part of the Property except at such location and in such form shall be determined by the Association." Wood argues that this second sentence demonstrates that the first sentence's restriction on "business" being conducted "on the Property" extends only to physical manifestations of business actually touching the Property. As such, this would not include her Internet transactions with her short-term renters who utilize her unit without any physical manifestations of such business touching the Property.

¶ 43 We disagree. It is clear that the second sentence was specifically meant to regulate whether, and where, certain types of signage (for sale or for rent signs or other advertising) can appear on the Property. Section 11(b) continues on to set forth various rights of the trustee and developer of the condominium to place such signs on the Property until all units are sold. Viewing section 11(b) as a whole, the restriction on "business" in the first sentence of section 11(b) is not merely meant to apply only to "business" signage or other merely "physical manifestations" of business on the Property. If that were so, the second sentence restricting signage would be redundant. Moreover, the plain language of the first sentence restricting

business, trade, and the like from being conducted on the Property does not specifically state that only "physical manifestations" of such business or trade are prohibited. Wood's proposed construction would be reading into the first section of 11(b) additional language that is not there. "We will not add terms to a contract to change the plain meaning, as expressed by the parties." *Ritacca Laser Center v. Brydges*, 2018 IL App (2d) 160989, ¶ 21. The plain language of these two sentences regulates two different types of activities—the conducting of business and the placing of signage on the Property.

¶ 44    Moreover, viewing section 11 as a whole, it is apparent that it is intended to address various permissible and impermissible uses of the Property and not merely just the placement of signage or visible manifestations of doing business on the Property. Indeed, the title of section 11 is "Use and Occupancy of Units and Common Elements." Section 11 contains 15 subsections related to various uses. For example, other subsections of section 11 set forth regulations that not only deal with matters visible on the outside of the units (such as not placing obstructions in or using common areas for storage, and a prohibition on hanging anything on the outside of the windows) but also matters that occur inside the units that are not physically visible—such as prohibiting any activity or keeping anything in a unit that could raise or cancel the Association's insurance, keeping unauthorized animals in one's unit, or overloading the electrical wiring.

¶ 45    Wood also contends section 4(b) buttresses her argument that she has the right to use her unit as a short-term rental. Section 4(b) provides in relevant part that "each Unit Owner, his agents, permitted Occupants, family members and invitees shall have the right to use the Common Elements for all purposes incident to the use and occupancy of his Unit as a place of residence and such other incidental uses permitted by the Condominium Instruments."

¶ 46    We find section 4(b) is not helpful to Wood's case. This provision merely provides that a unit owner and his or her invitees/permitted occupants may use the common elements of the Association as part of the use of the unit as a residential property. It does not relate to whether using the unit as a short-term rental on Airbnb is otherwise permissible under the Declaration.

¶ 47    Wood further argues that interpreting section 11(b) to prohibit her short-term rental activities would mean that unit owners could not conduct work-related telephone calls, order pizza, or engage in other such activities in their units as these would be classified as "conducting business" on the Property.

¶ 48    However, reading section 11(b) in light of section 11(p) makes clear that Wood's concern is unfounded. Section 11(p) provides that section 11:

> "shall not be construed to prevent or prohibit a Unit Owner from maintaining his personal professional library, keeping his personal business or professional records or accounts, handling his personal business or professional telephone calls, or conferring with business or professional associates, clients, or customers in his dwelling Unit."

¶ 49    This carve-out in section 11(p) demonstrates that conduct such as answering work-related telephone calls or ordering a pizza from one's unit would not be prohibited under the more general prohibitions contained in section 11(b) restricting "business, trade, occupation" from being "conducted, maintained, or permitted on any part of the Property."

¶ 50    Wood also disputes the circuit court's determination that, in reading the Declaration as a whole, section 11(b) is a more broad, general prohibition intended to restrict using the Property for income-generating activities, while section 7 provides a narrow exception for long-term

leasing. Wood asserts that section 7 should be read as a "self-contained" provision and the circuit court read section 11(b) too broadly.

¶ 51 We find no error in the circuit court's construction. Generally, when interpreting a contract, we must give effect to all of the contract's provisions if it is possible to do so. *McHenry Savings Bank v. Autoworks of Wauconda, Inc.*, 399 Ill. App. 3d 104, 111 (2010). We must also construe the Declaration as a whole. *Alliance Property Management*, 2015 IL App (1st) 150169, ¶ 27; *Palm*, 2014 IL App (1st) 111290, ¶ 75. "Courts and legal scholars have long recognized that, where both a general and a specific provision in a contract address the same subject, the more specific clause controls." *Grevas v. United States Fidelity & Guaranty Co.*, 152 Ill. 2d 407, 411 (1992). Here, section 11(b) restricts in broad terms any "industry, business, trade, occupation or profession of any kind" from being "conducted, maintained, or permitted on any part of the Property." Section 7, in turn, provides a unit owner with the "right to lease, or permit a subsequent sublease or assignment of all *** of his Unit *** except that no Unit shall be leased, subleased or assigned for a period of less than thirty (30) days." Section 7 continues on to impose additional regulations on such long-term leasing activities, such as requiring the unit owner to provide the Association with a copy of any leases/subleases/assignments and providing the Association with the authority to pursue the unit owner and lessee/sublessee/assignee for violations of the Declaration.

¶ 52 Reading these provisions together, the broad prohibition against conducting or maintaining any business, trade, or other types of activity on the Property is modified by the carve-out in section 7 for long-term leasing type of activities of the units. As section 7 contains no exception for short-term leases, subleases, assignments, or licenses, the more general prohibition in section 11(b) controls to prohibit Wood's short-term Airbnb rental of her unit. What is more, this construction is further supported by the above-mentioned provision in section 11(b): "No 'For Sale' or 'For Rent' signs, advertising or other displays shall be maintained or permitted on any part of the Property except at such location and in such form shall be determined by the Association." The fact that the Association does not completely prohibit "For Rent" signs, and instead regulates their placement, demonstrates that rental of the units is an activity allowed as a "carved-out" activity under section 7.

¶ 53 In her final contention, Wood cites several cases from foreign jurisdictions in asserting that other courts have found provisions similar to section 11(b) to be ambiguous as it relates to short-term rental activity, and have therefore construed such provisions narrowly and found that short-term rentals were not prohibited.

¶ 54 Initially, we observe that cases from foreign jurisdictions are not binding on this court, although they may have persuasive value. *Kim v. Mercedes-Benz, U.S.A., Inc.*, 353 Ill. App. 3d 444, 455 (2004); *Midland Funding LLC v. Schellenger*, 2019 IL App (5th) 180202, ¶ 12.

¶ 55 Further, Wood cites 15 cases in support of her assertion, but she offers only a cursory, one-sentence summary of the holding in each case, without drawing out the specific facts/provisions or operative law for comparison to the specific provisions and law involved in the present case. It is axiomatic that the language of the contract here—the Declaration—governs over all else (*Intersport, Inc. v. National Collegiate Athletic Ass'n*, 381 Ill. App. 3d 312, 318-19 (2008)) and that the provisions of the Declaration must be construed as a whole (*Alliance Property Management*, 2015 IL App (1st) 150169, ¶ 27). As such, the specifics of the contractual language involved in the cited cases is instrumental in determining whether they provide any persuasive value in construing the Declaration here. See *Wilmington Savings*

*Fund Society, FSB v. Zarkhin*, 2019 IL App (2d) 180439, ¶ 38 (failure to present a fully developed argument supported by legal authority and more than a mere cursory analysis results in forfeiture of the argument on appeal); Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 56 In any event, we have reviewed the cases Wood cites and do not find they hold any persuasive value as most involve contractual language that is substantially different from the precise language present in the Declaration here. In addition, Wood's argument fails to account for any differences in Illinois law, such as, for example, the fact that our courts have found that a condominium association may lawfully place restrictions on leasing of units in the Declaration and that such a restriction enjoys a strong presumption of validity. See *Apple II Condominium*, 277 Ill. App. 3d at 352.

¶ 57 It is notable that only one case cited by Wood involved similar language to the section 11(b) here, *Mullin v. Silvercreek Condominium, Owners Ass'n*, 195 S.W.3d 484 (Mo. Ct. App. 2006). In *Mullin*, the condominium declaration provided that the units " 'shall be used, improved and devoted exclusively to residential use by a single family.' " *Id.* at 488. Another provision further provided that " '[n]o business, trade, occupation or profession of any kind shall be conducted, maintained or permitted on any part of the property,' " but it continued on with the following caveat: " 'Nothing in this [s]ection 6.2 is intended to restrict the right of any condominium unit owner to rent or lease his (their) condominium unit from time to time[.]' " *Id.* In finding that these provisions, when read together, did not prohibit "nightly rentals" of the units, the court reasoned that any ambiguity in a restrictive covenant should be resolved in favor of the free use of the property, that the actions of the parties supported that the condominiums had been used as short-term rentals since their inception, and that the association had previously allowed such use. *Id.* at 489-91.

¶ 58 The major distinction between the contractual language in *Mullin* and in the present case is that after the provision that mirrors section 11(b), the declaration in *Mullin* continued on to state that nothing in that provision was "intended to restrict the right of any condominium unit owner to rent or lease" his unit "from time to time." Thus, the declaration in *Mullin* expressly excluded "rental" of one's unit from the "[n]o business *** shall be conducted" prohibition. This suggests that, absent such a carve-out expressly included in this provision, the "business" prohibition would bar such rental activity. Applying similar reasoning in the present case, there would have been no need to authorize leasing, subleasing, or assignments in section 7, if such activities would not otherwise be barred by section 11(b). As such, *Mullin* actually supports the construction of the Declaration that is advocated by defendants here.

¶ 59                                                              III. CONCLUSION

¶ 60 For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 61 Affirmed.