2026 IL App (2d) 250374
No. 2-25-0374
Opinion filed May 1, 2026

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

BENJAMIN CARTER, Plaintiff-Appellant,

v.

FOX LAKE FIRE PROTECTION DISTRICT, Defendant-Appellee.

Appeal from the Circuit Court of Lake County.
Honorable Daniel L. Jasica, Judge, Presiding.
No. 24-CH-072

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Birkett and Mullen concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Benjamin Carter, an injured firefighter, filed a complaint for declaratory judgment against defendant, Fox Lake Fire Protection District (District), pertaining to his right to continue receiving certain health insurance benefits. The circuit court of Lake County granted the District's motion for summary judgment on Carter's complaint and denied Carter's cross-motion for summary judgment. Carter appeals from that order. We affirm.

¶ 2                        I. BACKGROUND

¶ 3    Carter was a firefighter with the District from March 16, 2012, until August 9, 2017. On October 20, 2014, he suffered a catastrophic injury while responding to a motor vehicle crash. On August 9, 2017, Carter was awarded a duty-related disability pension. Further, under section 10 of

the Public Safety Employee Benefits Act (Benefits Act) (820 ILCS 320/10 (West 2016)), Carter became entitled to receive certain health insurance benefits for the remainder of his life at no cost.

¶ 4        Since 2012, the District had provided all its employees with a high-deductible group health insurance plan through Blue Cross/Blue Shield. The District also provided all its active members with a Health Reimbursement Arrangement plan (HRA), through Employment Benefits Corporation (EBC), to help pay the high medical expense deductibles and co-pays under the Blue Cross/Blue Shield plan. The HRA benefit was provided in the form of a debit card funded by the District that employees could use to pay non-covered medical expenses.

¶ 5        From August 2017 through December 31, 2023, the District continued to provide the same benefits to Carter that it provided to its active employees. That is, the District paid the premium for Carter's coverage in the Blue Cross/Blue Shield group health insurance plan and provided Carter with the HRA benefit. The District also provided Carter with vision, dental, and life insurance.

¶ 6        On September 28, 2023, the District notified Carter that it had determined that he was receiving benefits beyond those he was entitled to receive under the Benefits Act. Specifically, the District informed Carter that he was not entitled to receive vision, dental, or life insurance or any HRA benefits. The District indicated that those benefits would cease on January 1, 2024.

¶ 7        On April 5, 2024, Carter filed a one-count complaint for declaratory relief, seeking a declaration that the District was obligated under section 10 of the Benefits Act to continue to pay him the same HRA plan benefits that the District paid to its active employees. (Carter did not challenge the loss of his vision, dental, and life insurance).

¶ 8        On May 21, 2024, the District filed an answer, denying that the Benefits Act required it to provide Carter with any HRA benefits. Thereafter, the parties filed cross-motions for summary

judgment. Both parties argued that the plain language of the Benefits Act and the HRA plan supported their respective positions.

¶ 9    On July 28, 2025, the trial court granted the District's motion for summary judgment and denied Carter's cross-motion. The trial court found that the HRA benefit was a supplemental benefit and not part of the District's basic health plan that it was obligated to continue to provide.

¶ 10    On August 27, 2025, Carter filed a timely notice of appeal.

¶ 11                                II. ANALYSIS

¶ 12    Carter challenges the trial court's ruling on the cross-motions for summary judgment. A motion for summary judgment should be granted only where there is no genuine issue of material fact and the moving party is clearly entitled to judgment as a matter of law. *Pielet v. Pielet*, 2012 IL 112064, ¶ 29. Whether or not such an issue exists is to be determined by the court from the pleadings, depositions, affidavits, and exhibits in each case. *Schierer v. Ameritex Division, United Merchants & Manufacturers, Inc.*, 81 Ill. App. 3d 90, 92 (1980). When parties file cross-motions for summary judgment, "they agree that only a question of law is involved and invite the court to decide the issues based on the record." *Pielet*, 2012 IL 112064, ¶ 28.

¶ 13    "However, the mere filing of cross-motions for summary judgment does not establish that there is no issue of material fact, nor does it obligate a court to render summary judgment." *Id.* A trial court's decision on a motion for summary judgment is reviewed *de novo*. *Gaston v. Founders Insurance Co.*, 365 Ill. App. 3d 303, 314 (2006). As we agree with the parties that there are no issues of material fact here, we will review the trial court's judgment as a matter of law.

¶ 14    Carter argues on appeal that the HRA was an essential component of the District's health insurance plan and that the District must continue providing him with the HRA under the Benefits

Act. Carter also argues that the intent of the Benefits Act would be thwarted if he was forced to pay the high deductibles of the insurance plan without the benefit of the HRA.

¶ 15    In resolving this issue, Carter asserts that we need only consider the language of the HRA and not the language of the Benefits Act. Conversely, the District argues that we need only consider the language of the Benefits Act and not that of the HRA. We believe that a consideration of both is helpful in determining whether the District was obligated to continue to provide Carter with the HRA benefit.

¶ 16    The issue before us thus raises questions of both statutory and insurance contract interpretation. The fundamental rule of statutory interpretation is to ascertain and give effect to the intent of the legislature. *Benzakry v. Patel*, 2017 IL App (3d) 160162, ¶ 74. The most reliable indicator of that intent is the language of the statute itself. *Id.* In determining the plain meaning of statutory language, a court will consider the statute in its entirety, the subject the statute addresses, and the apparent intent of the legislature in enacting the statute. *Id.* If the statutory language is clear and unambiguous, it must be applied as written, without resorting to further aids of statutory interpretation. *Id.* An issue of statutory interpretation is reviewed *de novo*. *Id.* ¶ 73.

¶ 17    When interpreting the language in an insurance policy, the general principles of contract construction apply. *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005). A court's primary objective in construing the language in an insurance policy is to determine and give effect to the intent of the parties as expressed by the agreement. *Sproull v. State Farm Fire & Casualty Co.*, 2020 IL App (5th) 180577, ¶ 25. Provisions of the contract should not be read in isolation but should be considered in the broader context of the contract as a whole. *Portage Park Capital, LLC v. A.L.L. Masonry Construction Co.*, 2024 IL App (1st) 240344, ¶ 16. When

interpreting a contract, we must give effect to all of the contract's provisions if it is possible to do so. *Wood v. Evergreen Condominium Ass'n*, 2021 IL App (1st) 200687, ¶ 51.

¶ 18    Section 10(a) of the Benefits Act provides:

"(a) An employer who employs a full-time law enforcement, correctional or correctional probation officer, or firefighter, who, on or after the effective date of this Act suffers a catastrophic injury or is killed in the line of duty *shall pay the entire premium of the employer's health insurance plan for the injured employee*, the injured employee's spouse, and for each dependent child of the injured employee until the child reaches the age of majority or until the end of the calendar year in which the child reaches the age of 25 if the child continues to be dependent for support or the child is a full-time or part-time student and is dependent for support. *The term "health insurance plan" does not include supplemental benefits that are not part of the basic group health insurance plan*. If the injured employee subsequently dies, the employer shall continue to pay the entire health insurance premium for the surviving spouse until remarried and for the dependent children under the conditions established in this Section. ***." (Emphases added.) 820 ILCS 320/10(a) (West 2016).

¶ 19    In relevant part, the HRA provides:

"Insurance Payments or Benefits

Your employer offers this plan *alongside* a major medical group health plan (referred to in this document as the medical plan), and you are required to participate in the medical plan (or in some cases, a similar group health plan offered by another employer) in order to participate in the EBC HRA. This means that your plan is an *integrated* HRA, because it is *integrated* with the medical plan. Any changes you make to your coverage

under the medical plan may require similar changes to your *integrated* HRA. Any payments or benefits that you are entitled to receive from an insurance company, HMO, or other provider of benefits are governed by the provider of those benefits and not by this plan." (Emphases added.)

¶ 20    The language of the Benefits Act is clear— the District must continue to provide its injured employees with health insurance coverage by paying the entire premium associated with its health insurance plan. *Id.* The Benefits Act also plainly states that "[t]he term 'health insurance plan' does not include supplemental benefits that are not part of the basic group health insurance plan." *Id.* There is no indication in the District's health insurance plan that HRA benefits are part of this plan. Thus, HRA benefits are supplemental benefits that are not mandated by the Benefits Act. *Id.*

¶ 21    We reach the same determination in reviewing the language of the HRA plan. That plan provides that the HRA is offered "alongside" the medical group health plan. "Alongside" is defined as "in addition to." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/alongside (last visited Apr. 21, 2026) [https://perma.cc/35KA-LXFY]. "Supplemental" means the same thing. See *Smaha v. Simmons*, 60 N.W.2d 100, 102 (Iowa 1953) (explaining that legislature's use of the term "supplemental" means "in addition to"); Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/supplement (last visited Apr. 21, 2026) [https://perma.cc/WK6Q-K4N9] (supplement means something that completes or makes an addition). Thus, the HRA plan provides that the HRA benefits are supplemental to the health insurance plan and not part of the health insurance plan itself.

¶ 22    We note that, later, the HRA plan indicates that "it is integrated with the medical plan." "Integrate" is defined as to incorporate into a larger unit or to unite with something else. Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/integrate (last visited

Apr. 21, 2026) [https://perma.cc/WPL6-XC2J]. Considering that term by itself, it is possible to find the EBC's use of the term "integrated" means that the HRA and major medical group plan merge into one united plan. Such a reading would conflict with the HRA plan's earlier language that the HRA is not part of the medical group health plan but is, instead, in addition to it. This seeming contradiction, however, can be resolved by reading the language in context. *Portage Park Capital*, 2024 IL App (1st) 240344, ¶ 16.

¶ 23    The HRA plan explains that to participate, one must be enrolled in the medical health plan that the District offers. The document then describes the plan as "an integrated HRA," meaning that eligibility for the HRA is tied to participation in the District's health plan. In other words, one cannot participate in the District's HRA plan if one participates in a different health insurance plan (such as a spouse's) or no health insurance plan at all. "Integrated" thus refers to the eligibility link, not to the merger of the HRA and the medical plan into a single, unified plan. This interpretation is the most reasonable, as it allows all the terms in the HRA document to be read in harmony and does not create an internal conflict between the terms "alongside" and "integrated." See *Wood*, 2021 IL App (1st) 200687, ¶ 51.

¶ 24    In so ruling, we reject Carter's numerous arguments about why the District should continue to be obligated to provide him with the HRA. First, Carter insists that the HRA does not provide benefits, and, therefore, it cannot be construed as a supplemental benefit. He insists that the HRA only provides funds to offset the high deductible of the Blue Cross/Blue Shield policy that the District chose as its only health plan.

¶ 25    Carter's argument is contradicted by the language of the HRA plan description. The plan description states that the "HRA *** provides you with an opportunity to receive certain health

benefits from your employer free of income and payroll taxes." As such, the HRA plan clearly provides "benefits."

¶ 26    Second, Carter contends that the purpose of the Benefits Act is frustrated if he does not receive the same basic benefits that he was receiving when he was employed. This contention is refuted by the plain language of the Benefits Act, which provides that the employer is not obligated to continue to provide an injured employee with supplemental benefits. See 820 ILCS 320/10 (West 2016). As noted, the HRA benefit was a supplemental benefit to the District's health insurance plan.

¶ 27    Carter next argues that a 2023 amendment to the Benefits Act demonstrates the legislature's intent to expand the Act's beneficial purposes. That amendment provides that if an employer offers multiple insurance plans, the employee must be given choice of which insurance plan he wishes to enroll. Pub. Act 103-340, § 5 (eff. Jan. 1, 2024) (now 820 ILCS 320/10 (West 2024)). The amended version still includes language that an employer is not obligated to provide his former employee with supplemental benefits. *Id.* Thus, contrary to Carter's arguments, the amended version of the Benefits Act reinforces the conclusion that the legislature did not intend for an employer to provide identical benefits to a retired-injured employee that it is providing to its current employees.

¶ 28    Carter further argues that discontinuing a firefighter's ability to use the HRA after he is catastrophically injured is against public policy because it will make it less likely that a firefighter will engage in risky behavior when called to an emergency. Our supreme court has explained that it is the role of the legislature, rather than the courts, to determine public policy. In *Phoenix Insurance Co. v. Rosen*, 242 Ill. 2d 48 (2011), the supreme court stated:

"In relation to the judicial branch, the General Assembly, which speaks through the passage of legislation, occupies a superior position in determining public policy. [Citation.] We have strictly adhered to the position that the public policy of the state is not to be determined by the varying opinions of laymen, lawyers or judges as to the demands of the interests of the public. *** [Citation.] Thus, [w]hen the legislature has declared, by law, the public policy of the State, the judicial department must remain silent, and if a modification or change in such policy is desired the law-making department must be applied to, and not the judiciary, whose function is to declare the law but not to make it." (Internal quotation marks omitted.) *Id.* at 55-56.

¶ 29 We acknowledge that Carter sets forth a reasonable policy argument as to why he should continue receiving the HRA supplemental benefit. However, from our reading of the Benefits Act, it is apparent that the Illinois General Assembly has struck a balance between helping an injured employee maintain his health insurance but also not making the benefits so generous that it places an undue burden on taxpayers. See *Nowak v. City of Country Club Hills*, 2011 IL 111838, ¶¶ 19-20 (approving reading of Benefits Act that ensured that the cost of providing the mandated benefit was as low as possible for the injured officer's employer). As the legislature has effectuated what the public policy of our state is regarding maintaining an injured employee's insurance benefits, we have no basis to disturb its determinations. *Phoenix Insurance Co.*, 242 Ill. 2d at 55-56. As such, if Carter wishes to challenge the current public policy in our state, he must direct that argument to the General Assembly—not to us. *Id.*

¶ 30                                   III. CONCLUSION

¶ 31 For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 32 Affirmed.

*Carter v. Fox Lake Fire Protection District*, 2026 IL App (2d) 250374

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 24-CH-072; the Hon. Daniel L. Jasica, Judge, presiding. |
| **Attorneys for Appellant:** | Scott Barber, of Barber Law Offices, LLC, of Schaumburg, for appellant. |
| **Attorneys for Appellee:** | Ericka J. Thomas, of Ottosen DiNolfo Hasenbalg & Castaldo, Ltd., of Lisle, for appellee. |