CHICAGO TITLE AND TRUST COMPANY, as Trustee, Plaintiff-Appellee, v. THE VILLAGE OF INVERNESS, *et al.*, Defendants-Appellants.

First District (4th Division)   No. 1—99—2051

Opinion filed August 16, 2000.

James P. Bateman and Bruce A. Bode, of Barrington, for appellants.

Alan L. Stefaniak, of Park Ridge, for appellee.

JUSTICE HALL delivered the opinion of the court:

This action involves administrative review of a decision by defendant, the Village of Inverness Zoning Board of Appeals (the Board), denying plaintiff's, Chicago Title & Trust Company, trustee, u/t/a dated September 14, 1988, trust No. 1091974 (plaintiff), request for a building permit. Plaintiff sought to build a single-family residence on the subject property. The Village of Inverness zoning enforcement officer ruled that the subject property did not meet the minimum lot size and lot width requirements under the Village's zoning ordinance and did not fall within the exception provided in section 5—8—6 of the zoning ordinance (Inverness Village Code § 5—8—6 (eff. December 12, 1978)) and, therefore, could not be built upon. The Board denied plaintiff's appeal of this decision. Plaintiff filed a complaint seeking administrative review of the Board's decision. On May 10, 1999, the circuit court reversed the decision of the zoning board of appeals and ordered the issuance of a building permit but stayed that order pending appeal. Defendants filed a timely notice of appeal on June 4, 1999. For the following reasons, we affirm.

## I. BACKGROUND

Plaintiff is the owner of lot 38 in the Country Club Estates subdivision (the subject property), an unimproved lot located in the Village of

Inverness (the Village). The subject property was created by a plat of subdivision recorded with the Cook County recorder of deeds on October 6, 1927. The subject property comprises approximately .64 acres (27,800 square feet) in area and has a lot width of 100 feet and a depth of about 278 feet. The subject property is zoned in an A-I single-family residence district that requires a lot size of 1 acre (43,560 square feet) and a lot width of 140 feet.

On November 9, 1962, Mr. and Mrs. Arthur Johnson purchased two lots adjacent to the subject property in the same subdivision (lots 36 and 37). In 1976, Robert Johnson, Mr. and Mrs. Arthur Johnson's son, bought the subject property. On December 12, 1978, Mr. and Mrs. Arthur Johnson owned lots 36 and 37 and Robert Johnson owned the subject property.

On December 12, 1978, the Village amended its zoning ordinance to add section 5—8—6, concerning the consolidation of contiguous lots. On April 30, 1979, the Johnsons sold lots 36 and 37 to Thomas and Isabel Barber. On March 11, 1980, the subject property, along with lots 36 and 37, was involuntarily annexed into the Village.

In 1984, the Barbers quitclaimed their interests in lots 36 and 37 to trust No. 2126. In 1985 trust No. 2126 conveyed lots 36 and 37 to David Wang. Also in 1985, lot 38 was acquired by Midwest Real Estate Investment Company by tax deed. In 1989 Midwest Real Estate conveyed the subject property to plaintiff.

In January 1996, plaintiff sought a determination from the Village that a building permit could be issued for the subject property pursuant to an exception provision contained in section 5—8—6 of the zoning ordinance. In the alternative, plaintiff filed a petition for certain variances from the zoning ordinance to allow construction of a single-family residence on the nonconforming subject property. After the Village denied the request for a building permit, plaintiff appealed the decision to the zoning board of appeals. The Board denied plaintiff's appeal. The Board also recommended denial of plaintiff's application for variances. On November 11, 1997, the Village board passed ordinance No. 97—602 denying plaintiff's request for variances.

On December 11, 1997, plaintiff filed a four-count complaint. Count I sought administrative review of the Board's decision that the subject property could not be granted a building permit under the exception provided in section 5—8—6 of the zoning ordinance. Counts II, III and IV were brought in the alternative and raised issues regarding the constitutionality of section 5—8—6 and the Village board's denial of plaintiff's request for variances.

Plaintiff filed a motion for judgment on the pleadings as to count I and, in the alternative, a motion for summary judgment as to counts

II and III. On May 10, 1999, the circuit court ruled in favor of plaintiff on count I, reversing the Board's decision and ordering that a building permit issue for the subject property so as to allow it to be used for single-family residential purposes. The circuit court did not rule on the remaining counts in plaintiff's complaint, stating that its ruling on count I made the other counts moot. The circuit court's order was stayed pending appeal.

On appeal defendants contend: (1) that the circuit court erred in reversing the Board's determination that the subject property does not fall within the exception to section 5—8—6 of the zoning ordinance, and (2) that the circuit court erroneously based its decision upon irrelevant allegations and facts not before the administrative agency.

## II. DISCUSSION

### Standard of Review

■ This case involves the administrative review of the decision by the zoning board of appeals. Judicial review of an administrative agency's actions extends to all questions of law and fact presented by the record. *Chicago School Reform Board of Trustees v. Illinois Educational Labor Relations Board*, 309 Ill. App. 3d 88, 721 N.E.2d 676 (1999). While the Board's findings of fact are considered *prima facie* true and correct (735 ILCS 5/3—110 (West 1994)) and will not be disturbed unless they are contrary to the manifest weight of the evidence (*Midwest Central Education Ass'n v. Illinois Educational Labor Relations Board*, 277 Ill. App. 3d 440, 660 N.E.2d 151 (1995)), the issue in this case involves the construction of an ordinance, which is a question of law. *Midwest Central Education Ass'n*, 277 Ill. App. 3d at 444; *Kujbida v. Horizon Insurance Agency, Inc.*, 260 Ill. App. 3d 1001, 632 N.E.2d 151 (1994). Therefore, the standard of review is *de novo*. *Midwest Central Education Ass'n*, 277 Ill. App. 3d at 444-45.

### B. The Exception to Section 5—8—6

This case involves the construction of section 5—8—6 of the zoning ordinance of the Village of Inverness, which provides:

"LOTS OF RECORD: If two (2) or more contiguous lots of record (or combination of lots of record or portions of lots of record) are in single ownership or unified control on December 12, 1978, and if all or part of the lots do not meet the requirements for width or area established by this Zoning Title, the lots shall be considered an undivided parcel for the purpose of this Zoning Title. No portion of said parcel shall be used or sold which does not meet lot width and area requirements established by this Zoning Title, nor shall any division of the parcel be made which leaves remaining

any lot or lots with width or area below the requirements stated herein, except that any single lot or parcel of land held in one ownership which was of record on said date or on the date of annexation thereof that does not meet the requirements for minimum lot width and area may be utilized for a permitted use; provided, that yards, setbacks and usable open spaces are not less than seventy five per cent (75%) of the minimum required dimensions or areas and provided that its use meets all requirements of the Health and Sanitation Title of the Inverness Village Code and the requirements of all other ordinances, rules and regulations. Nothing herein shall prevent the conveyance of any parcel or any portion of any parcel to an adjoining owner, if after said conveyance, the portion of said parcel not so conveyed (in the event of a conveyance of a portion of a parcel) meets width and area requirements of this Zoning Title.

For the purpose of this Section, single ownership of separate lots of record includes ownership by a spouse or child or by land trust of which there is a common beneficial owner, or a land trust as to which a child or spouse is a beneficial owner." Inverness Village Code § 5—8—6 (eff. December 12, 1978).

It is undisputed that the subject property was in single ownership with contiguous lots 36 and 37 on December 12, 1978, and therefore is subject to section 5—8—6. On that date the subject property was owned by Robert Johnson and lots 36 and 37 were owned by his parents. The ordinance specifically provides that ownership by parents and a child, whether directly or through a land trust, constitutes single ownership for purposes of section 5—8—6. It is further undisputed that the subject property does not meet the minimum lot width and lot area requirements and is thus a nonbuildable lot. The subject property is zoned A-1 single-family residence, which requires a minimum lot size of 1 acre and a minimum lot width of 140 feet. The subject property has an actual lot size of .64 acres and an actual lot width of 100 feet.

What is at issue is whether the subject property falls within the exception language of section 5—8—6 so that it can be utilized for a permitted use (a single-family residence). The Board found that it did not. In its decision the Board found that the purpose of section 5—8—6 was to require the consolidation of commonly owned contiguous lots or portions of lots so as to create buildable lots in conformance with the minimum width and area requirements of section 5—4—1. The Board went on to find that the exception language applied to any single lot of record not contiguous with other commonly owned lots on December 12, 1978, which does not meet the minimum lot width or area requirements. The Board found that the exception language was

an exception to the consolidation rule of section 5—8—6 only to the extent that any entire undivided parcel failed to meet the minimum lot width or area requirements.

Defendants contend that the Board's interpretation of the exception language is correct and that the circuit court erred in finding that the exception applied to the subject property because the subject property was contiguous with two other commonly owned lots (lots 36 and 37) on December 12, 1978. Plaintiff contends that the subject property falls within the parameters of the exception because it is a single lot held in one ownership, that was of record on December 12, 1978, and that does not meet the minimum lot width and lot area requirements, but can meet the 75% requirements for yards, setbacks and usable open spaces as provided in section 5—8—6.

■ This court must construe the exception language of section 5—8—6 and determine the meaning of "any single lot or parcel of land." The rules of construction that apply to statutes apply equally to ordinances. *La Grange State Bank v. Village of Glen Ellyn*, 227 Ill. App. 3d 308, 591 N.E.2d 480 (1992); *Constantine v. Village of Glen Ellyn*, 217 Ill. App. 3d 4, 575 N.E.2d 1363 (1991). When interpreting a statute or ordinance, the primary function is to ascertain and give effect to the true intent and meaning of the drafters. *Davis v. Human Rights Comm'n*, 286 Ill. App. 3d 508, 676 N.E.2d 315 (1997); *People ex rel. Department of Labor v. Soccer Enterprises, Inc.*, 302 Ill. App. 3d 481, 707 N.E.2d 108 (1998). In determining the intent of the drafters, the court first considers the statutory language, which is given its plain and ordinary meaning. *Soccer Enterprises, Inc.*, 302 Ill. App. 3d at 483.

To interpret the phrase at issue, we must read the entire section together and construe it so as to make it harmonious and consistent in all its parts. *Morris v. Broadview, Inc.*, 385 Ill. 228, 52 N.E.2d 769 (1944). The entire section deals with the consolidation of contiguous lots of common ownership. The first half of the sentence in which the exception appears basically prohibits the division of an undivided parcel, as created by the first part of the section, into nonconforming lots. Logically an exception must relate back to the general provision. The exception here provides a situation to depart from the general rule and divide an undivided parcel into nonconforming lots. This is allowed when the undivided parcel contains a single lot or parcel of land held in one ownership which was of record on December 12, 1978, that does not meet the minimum lot area or width requirements, but can meet the 75% minimum. There would be no need to provide an exception for single lots not contiguous with other commonly owned lots on December 12, 1978, because such lots are not

subject to the general rules of section 5—8—6. Moreover, an exception is provided for such nonconforming single lots in sections 5—4—1 and 5—4—3 of the ordinance. Section 5—3—1 provides that the permitted uses in A-1 residential district are: "[s]ingle family residences, excluding trailers, each on a building plot or lot of not less than one hundred forty feet (140') average width and one acre in area, except any smaller lot or parcel of land of public record on the adoption date of this Title or on the date of annexation thereof to the Village." Inverness Village. Code § 5—3—1 (1983). Similarly, section 5—4—1 provides the relevant lot area requirements for the A-1 residential district: "[b]uilding plot or lot of not less than one hundred forty feet (140') average width and one acre in area, except any smaller lot or parcel of land of public record on the effective date of this Zoning Ordinance." Inverness Village Code § 5—4—1 (1983).

Defendants argue that this interpretation of the exception language in section 5—8—6 renders the portion of the section dealing with consolidation superfluous. According to defendants if "any single lot" simply means any one lot of record that does not meet the minimum lot width and area requirements, without regard to the ownership of contiguous lots, the general application of section 5—8—6 has no effect. The exception so interpreted swallows the rule. However, there are situations where the exception language would not apply; for example, where a piece of property was not of record on December 12, 1978, or could not meet the 75% requirements. It is true that our interpretation of the exception severely limits the general application of section 5—8—6. However, to adopt defendant's interpretation would be to render the term "any single lot" in the exception completely superfluous. Under defendants' interpretation, "any single lot" excepts from the general rule something that was never subject to the general rule in the first place. An ordinance should be construed, if possible, so that no term is rendered superfluous or meaningless. *Soccer Enterprises, Inc.*, 302 Ill. App. 3d at 483.

■ The subject property was a single lot held in one ownership which was of record on December 12, 1978. It is undisputed that the subject property was created by a plat of subdivision recorded with the Cook County recorder of deeds on October 6, 1927. It is further undisputed that the subject property does not meet the requirements for the minimum lot area and width for lots zoned A-1 single-family residence. At the hearing before the Board, plaintiff introduced a septic design and lot layout for construction of a single-family residential structure on the subject property. It showed that the 75% requirements for yards, setbacks and usable open spaces can be met, as well as installation of a septic system meeting all of the requirements of the applicable Village ordinances and rules and regulations.

The language in zoning ordinances should be interpreted in favor of the free use of property. *City of Chicago Heights v. Old Orchard Bank & Trust Co.*, 96 Ill. App. 3d 789, 422 N.E.2d 69 (1981). Zoning ordinances are in derogation of common law rights to the use of property and should be strictly construed in favor of the rights of the property owner to unrestricted use of the property. *Constantine v. Village of Glen Ellyn*, 217 Ill. App. 3d 4, 575 N.E.2d 1363 (1991). Any ambiguities in a zoning ordinance should be resolved against the enacting authority. *City of Chicago Heights*, 96 Ill. App. 3d at 794. We hold that the Board incorrectly found that the exception in section 5—8—6 did not apply to the subject property.

## C. Additional Allegations and Facts Considered by the Circuit Court

■ Finally, defendants contend that the circuit court improperly considered irrelevant facts and matters not before the administrative agency to support its decision. Defendants complain that the circuit court never addressed whether the subject property fell within the exception created by section 5—8—6. However, an appellate court need not defer to the decision of the trial judge when reviewing questions of law, such as construction of an ordinance. We conduct a *de novo* review. *County of Kankakee v. Anthony*, 304 Ill. App. 3d 1040, 710 N.E.2d 1242 (1999). Moreover, we may affirm based on any ground which is apparent from the record, even if not relied upon or considered by the trial court. *Material Service Corp. v. Department of Revenue*, 98 Ill. 2d 382, 457 N.E.2d 9 (1983).

## III. CONCLUSION

Accordingly, for the reasons set forth above, the judgment of the circuit court is affirmed.

Affirmed.

SOUTH and CAMPBELL, JJ., concur.