2022 IL App (1st) 210888
Opinion filed: March 17, 2022

FIRST DISTRICT
FOURTH DIVISION

No. 1-21-0888

| | | |
|---|---|---|
| CLAY WORTHAM and ANITA WORTHAM, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Cook County. |
| | ) | |
| v. | ) | Nos. 20 CH 06818 |
| | ) | 21 M 371 |
| THE VILLAGE OF BARRINGTON HILLS, a | ) | |
| Municipal Corporation, | ) | Honorable |
| | ) | Martin C. Kelley, |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE ROCHFORD delivered the judgment of the court, with opinion.
Justices Lampkin and Martin concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiffs, Clay and Anita Wortham, filed complaints for administrative review of two final

decisions of the Village of Barrington Hills (Village), fining them a total of $32,250 for committing

52 separate violations of section 5-5-2 of the Barrington Hills Village Code (Barrington Hills

Village Code § 5-5-2 (amended Dec. 7, 2016)) by repeatedly providing short-term vacation rentals

of their single-family residential home through the website Vrbo.com (Vrbo). The circuit court

consolidated the administrative review actions and affirmed. Plaintiffs appealed to this court. The

primary issue on appeal is whether plaintiffs' act of renting out their home on Vrbo constituted a

permitted residential use under the applicable provisions of Title 5 of the Barrington Hills Village

Code (hereinafter, Zoning Code) (Barrington Hills Village Code, tit. 5) or an impermissible

business use. For the reasons that follow, we find that plaintiffs' rentals of their home constituted

an impermissible business use and affirm the circuit court.

¶ 2    The Zoning Code provides zoning regulations for the Village. Section 5-5-2 permits single-

family detached dwellings in R1 residential zoning districts (R1 districts). Barrington Hills Village

Code § 5-5-2 (amended Dec. 7, 2016). Section 5-2-1 defines a "dwelling" as "[a] building ***

designed or used exclusively for residential occupancy, including single-family dwellings *** but not including hotels or lodging houses."[1] *Id.* § 5-2-1. Section 5-2-1 defines "hotel" as "[a]n establishment which is open to transient guests, in contradistinction to a boarding house or lodging house, and is commonly known as a hotel in the community in which it is located and which provides customary hotel services." *Id.* "Lodging house" is not defined in Title 5.

¶ 3     Section 5-5-2(A) also permits "[h]ome occupations, as accessory only to single-family detached dwellings" in R1 districts. *Id.* § 5-5-2(A). Home occupation is defined in section 5-3-4(D)(2) as:

"any lawful business, profession, occupation or trade conducted from a principal building or an accessory building in a residential district that:

a. Is conducted for gain or support by a full time occupant of a dwelling unit; and

b. Is incidental and secondary to the principal use of such dwelling unit for residential occupancy purposes; and

c. Does not change the essential residential character of such dwelling unit or the surrounding neighborhood." Barrington Hills Village Code § 5-3-4(D)(2) (amended Oct. 28, 2019).

¶ 4      Section 5-3-4(D) further states:

"Home Occupation: The intent of this subsection is to provide peace, quiet and domestic tranquility within all residential neighborhoods within the village and in order to guarantee to all residents freedom from nuisances, fire hazards, excessive noise, light and traffic, and

---

[1]Hotels, motels, and lodging houses are special uses allowable in the B4 business district pursuant to sections 5-6-4(D) and 5-6-11 of the Zoning Code. Barrington Hills Village Code § 5-6-4(D) (amended Dec. 19, 2017); Barrington Hills Village Code § 5-6-11 (amended Feb. 23, 2004).

other possible effects of business or commercial uses being conducted in residential districts. It is further the intent of this subsection to regulate the operation of a home occupation so that the general public will be unaware of its existence. A home occupation shall be conducted in a manner which does not give an outward appearance nor manifest characteristics of a business which would infringe upon the right of neighboring residents to enjoy the peaceful occupancy of their dwelling units or infringe upon or change the intent or character of the residential district." *Id.* § 5-3-4(D).

¶ 5     Plaintiffs are the owners of a single family home (the Property) located at 366 Overlook Road in the Village's R1 district, and they also own and operate two farms in Kentucky. When spending time at their farms in Kentucky, plaintiffs list the Property on Vrbo, a vacation rental online marketplace, for $299 per night. According to their Vrbo listing, occupancy is limited to eight guests, with a minimum three-night stay. Parties are not permitted. The entire home is listed, so that the guests have exclusive access to the Property during their stay and do not share the Property with plaintiffs.

¶ 6     Prior to March 1, 2020, plaintiffs rented the Property through Vrbo on at least 27 occasions.

¶ 7     On March 10, 2020, the Village messaged plaintiffs on Vrbo and informed them that "short-term rental use of your Property for lodging or other commercial purposes is strictly prohibited" by sections 5-5-2 and 5-2-1 of the Zoning Code, which only permit single-family detached dwelling use in the R1 district and do not permit hotels or lodging houses. The Village told plaintiffs to "immediately cease and desist from any use of your Property for commercial short-term rental purposes."

¶ 8     Plaintiffs ignored the cease and desist order and continued to rent the Property through Vrbo at least 14 more times.

¶ 9     On September 15, 2020, the Village sent plaintiffs a cease and desist letter again informing them that their use of the Property "for short-term rental for lodging or special events" in the R1 district is prohibited under sections 5-5-2 and 5-2-1 of the Zoning Code and that each violation carries a penalty of $750 per day "for every day such violation has remained existing."

¶ 10    On September 16, 2020, the Village again messaged plaintiffs through Vrbo informing them that the short-term rental of the Property violated sections 5-5-2 and 5-2-1 and "must immediately cease."

¶ 11    Due to plaintiffs' refusal to cease the short-term rental of the Property through Vrbo, the Village served a notice to plaintiffs on September 24, 2020, to appear before a hearing officer for an administrative adjudication on the alleged Zoning Code violations.

¶ 12    The parties appeared before the Village hearing officer and submitted a joint stipulation of facts and written arguments. The joint stipulation of facts set forth plaintiffs' ownership of the Property in the R1 district, their numerous vacation rentals of the Property through Vrbo, and the Village's multiple communications to plaintiff informing them that the rentals were in violation of the Zoning Code. The joint stipulation also attached a copy of plaintiffs' listing of the Property on Vrbo along with 53 customer reviews. One such review indicated that the renters accessed the Property by means of a keypad on the door with an access code.

¶ 13    In its written argument, the Village asserted that plaintiffs' repeated short-term vacation rentals of the Property through Vrbo constituted commercial uses of the Property as a lodging house for transient renters in violation of sections 5-5-2 and 5-2-1 of the Zoning Code, which allow for only residential (not commercial) use of properties in the R1 district except for certain home occupations not applicable here. Section 5-2-1 also specifically excludes lodging houses from the definition of the "dwellings" allowed in the R1 district.

¶ 14   Plaintiffs responded in their written argument that their rentals of the Property through Vrbo did not constitute commercial use thereof because the renters used the Property for ordinary living purposes and, as such, that the Property maintained its residential character.

¶ 15   Plaintiffs also argued that their rentals of the Property did not transform it into a lodging house, which is excluded from the R1 district. Plaintiffs noted that "lodging house" is not explicitly defined in the Zoning Code but that it is defined by the International Code Council in the 2015 International Building Code (IBC) (Int'l Code Council, Inc., International Building Code § 202 (2015)), which was adopted in the Barrington Hills Village Code. See Barrington Hills Village Code § 4-2-2 (amended Jan. 1, 2019) (adopting the 2015 edition of the IBC). Section 4-2-2(A) of the Barrington Hills Village Code provides that the IBC is "hereby adopted by reference as the Building Code of the Village." *Id.* § 4-2-2(A). Section 202 of the IBC defines a lodging house as "[a] one-family dwelling where one or more occupants are primarily permanent in nature and rent is paid for guest rooms." Int'l Code Council, Inc., International Building Code § 202 (2015). Plaintiffs construed section 202 of the IBC as requiring that a lodging house have at least one permanent occupant who lives on the premises and rents out spare rooms. Plaintiffs contended that since they do not live on the premises during the rental periods, but instead exit the premises while renting out the entire home, the use of the Property does not fall within the IBC's definition of a lodging house and is not excluded from the R1 district.

¶ 16   Plaintiffs also argued that the Zoning Code's definition of "hotel" lends further credence to their claim that renting out the Property under Vrbo did not transform it into a lodging house. The Zoning Code defines "hotel" as "[a]n establishment which is open to transient guests, *in contradistinction to a boarding house or lodging house*, and is commonly known as a hotel in the community in which it is located and which provides customary hotel services." (Emphasis added.)

Barrington Hills Village Code § 5-2-1 (amended Dec. 7, 2016). Plaintiffs argued that by defining a hotel as catering to transient guests, in express "contradistinction" to a lodging house, the Zoning Code was necessarily stating that a lodging house only caters to non-transient guests. "transient" is defined in the IBC as "Occupancy of a dwelling unit or sleeping unit for not more than 30 days" (emphases omitted) (Int'l Code Council, Inc., International Building Code § 202 (2015)), meaning (according to plaintiffs) that "non-transient" guests are those persons who occupy a dwelling for more than 30 days. Plaintiffs contended that the Village offered no evidence that any of the vacation rentals offered by them lasted longer than 30 days and, as such, failed to show that the renters were non-transient guests whose stay at the Property transformed it into a lodging house excluded from the R1 district.

¶ 17    Finally, plaintiffs argued that to the extent that the Village is seeking to prohibit short-term rentals of properties in the R1 district, the Zoning Code provides no indication of what the Village considers to be "short term" and therefore is unconstitutionally vague in violation of the due process clause. See U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2.

¶ 18    On October 31, 2020, the hearing officer entered a final administrative decision finding that plaintiffs had rented out the Property on Vrbo on 44 separate occasions and that each such rental constituted a use of the Property as a "commercial lodging house for transient short-term renters" in violation of section 5-5-2 of the Zoning Code. The hearing officer fined plaintiffs a total of $26,250 and ordered them to immediately cease "the unlawful commercial short-term rental use of the Property."

¶ 19    On November 16, 2020, plaintiffs filed a complaint for administrative review of the October 31, 2020, final administrative decision.

¶ 20    On November 17, 2020, the Village served a second notice of violations, alleging that since the final administrative decision, plaintiffs had continued to list the Property on Vrbo and had rented it out "on at least 7 separate days from November 10 through November 17, 2020."

¶ 21    At the administrative hearing held on the second notice of violations, Sergeant Ronald Riedel testified that on November 12, 2020, the Village "received a complaint of renters being on the Property." Sergeant Riedel went to the Property and observed three vehicles parked in the driveway, none of which were registered to the Property address. The sergeant spoke to one of the renters, Kristen Allen, who informed him that she and five other members of her family had checked into the Property on November 10 and would be staying until November 17. Plaintiffs were not present at the Property when Sergeant Riedel spoke with Allen. Sergeant Riedel drove by the Property again on November 16 and 17 and observed that the vehicles were still in the driveway.

¶ 22    On December 8, 2020, the hearing officer entered a final administrative decision finding that plaintiffs' rental of the Property for the eight days from November 10 through November 17 constituted eight separate uses of the Property "as a commercial lodging house for short-term renters" in violation of section 5-5-2 of the Zoning Code. The hearing officer fined plaintiffs $750 for each of the eight violations, totaling $6000, and ordered them to immediately cease "the unlawful commercial short-term rental use of the Property."

¶ 23    On January 7, 2021, plaintiffs filed a complaint for administrative review of the December 8, 2020, final administrative decision.

¶ 24    On February 1, 2021, the trial court entered an order consolidating both administrative review actions. On July 6, 2021, the trial court entered an order affirming the hearing officer's October 31, 2020, and December 8, 2020, final administrative decisions. Plaintiffs filed this timely

appeal, arguing that the hearing officer erred in finding that their short-term vacation rentals of the Property through Vrbo were not permitted uses under section 5-5-2 of the Zoning Code and in fining them a total of $32,250 for the code violations and ordering them to immediately cease such rentals.

¶ 25    In administrative review cases, we review the decision of the administrative agency, not the determination of the circuit court (*Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 531 (2006) (*per curiam*)), and may affirm on any basis in the record (*Younge v. Board of Education of the City of Chicago*, 338 Ill. App. 3d 522, 530 (2003)). Our standard of review turns on whether the issue presented is a question of fact, a question of law, or a mixed question of law and fact. *Comprehensive Community Solutions, Inc. v. Rockford School District No. 205*, 216 Ill. 2d 455, 471 (2005). The agency's factual findings will not be disturbed unless against the manifest weight of the evidence. *Id.* at 471-72. The agency's findings on questions of law are reviewed *de novo*. *Id.* at 471. Where the issue involves a mixed question of law and fact in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, we employ the clearly erroneous standard of review. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 211 (2008). An agency's decision is clearly erroneous when we are left with the definite and firm conviction that a mistake has been committed. *Id.*

¶ 26    In the present case, the clearly erroneous standard of review is inapplicable here because although the historical facts are admitted, the rule of law is in dispute as the parties differ over whether plaintiffs' repeated short-term vacation rentals of the Property through Vrbo are permitted uses in the R1 district under section 5-5-2 of the Zoning Code. Resolution of this issue requires us to construe section 5-5-2 (as well as other Zoning Code sections), which involves a question of

law that is reviewed *de novo*. See *Bass v. Cook County Hospital*, 2015 IL App (1st) 142665, ¶ 13; *First National Bank of Ottawa v. Dillinger*, 386 Ill. App. 3d 393, 395 (2008) (where a case involves the interpretation of a statute and the application of the statute to undisputed facts, our review is *de novo*).

¶ 27 The rules of statutory construction apply to municipal ordinances. *LeCompte v. Zoning Board of Appeals*, 2011 IL App (1st) 100423, ¶ 22. When a court construes a zoning ordinance, effect should be given to the intent of the drafters, the best indication of which is the ordinance's language, given its plain and ordinary meaning. *Id.* When a term in the ordinance is undefined, a dictionary may be used to determine its plain and ordinary meaning. *Id.* ¶ 29. Zoning ordinances are in derogation of common law rights to the use of property and should be strictly construed in favor of the rights of the property owner to unrestricted use of the property. *Chicago Title & Trust Co. v. Village of Inverness*, 315 Ill. App. 3d 1100, 1107 (2000). Any ambiguities in a zoning ordinance should be construed against the enacting authority. *Id.*

¶ 28 With these rules of statutory construction in mind, we now review the hearing officer's decisions finding that plaintiffs' repeated short-term vacation rentals of the Property through Vrbo constituted impermissible commercial uses in violation of section 5-5-2 of the Zoning Code. A case cited by the Village, *Wood v. Evergreen Condominium Ass'n*, 2021 IL App (1st) 200687, is informative regarding whether plaintiffs' short-term vacation rentals constituted permissible residential uses or impermissible commercial uses of the Property.

¶ 29 In *Wood*, the plaintiff filed a complaint for declaratory judgment and breach of fiduciary duty against the defendants after they prohibited her from operating her residential condominium unit as a short-term rental on the website Airbnb.com (Airbnb). *Id.* ¶ 1. The defendants filed a motion to dismiss under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West

2018)), arguing that the condominium association's declaration of condominium (Declaration) barred such short-term rentals. *Wood*, 2021 IL App (1st) 200687, ¶ 1. The trial court granted the defendants' motion to dismiss. *Id.* The plaintiff appealed, arguing that the trial court misconstrued the Declaration. *Id.* The defendants responded that the trial court committed no error because the plaintiff's short-term rental of her property under Airbnb was barred by section 11(a) of the Declaration, which stated:

" '(a) No part of the Property shall be used for other than housing and the related common purposes for which the property was designed. Each dwelling Unit or any two or more adjoining dwelling Units used together shall be used as a residence for a single family or such other uses permitted by this Declaration and for no other purposes.' " *Id.* ¶ 29.

¶ 30    We disagreed with the defendants' argument that the plaintiff's short-term rentals violated section 11(a). We found that section 11(a):

"[M]erely indicates that the units shall be used for single family residential housing or other permitted uses. At this stage in the proceedings, there is no indication that [the plaintiff] was renting her unit out for any other purpose besides residential, albeit of a short duration." *Id.* ¶ 30.

¶ 31    Next we considered the defendants' argument that the plaintiff's short-term rental of the unit was barred by section 11(b) of the Declaration, which states:

" 'No industry, *business*, trade, occupation or profession of any kind, commercial, religious, educational or otherwise, designed for profit, altruism, exploration or otherwise shall be conducted, maintained, or permitted on any part of the Property.' " (Emphasis added.) *Id.* ¶ 7.

¶ 32    The Declaration did not define "business," and so we consulted the dictionary definition of the term. *Id.* ¶ 35. According to Merriam-Webster Dictionary, the term "business" is defined as " 'a usually commercial or mercantile activity engaged in as a means of livelihood,' a 'commercial or sometimes an industrial enterprise,' and 'dealings or transactions especially of an economic nature.' " *Id.* ¶ 36 (quoting Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/business (last visited June 24, 2021) [https://perma.cc/BQB3-BMMQ]). We found that:

> "Certainly, [the plaintiff's] dealings with her short-term renters, *i.e.*, providing use of her condominium unit in exchange for payment, constitutes 'dealings or transactions especially of an economic nature.' She is engaged in a business enterprise in that she is providing her short-term renters with a service and a product—use of her unit as an accommodation—in exchange for payment." *Id.*

¶ 33    The plaintiff argued that she was not conducting business " 'on the Property' " in violation of section 11(b) because she advertises the unit online and is paid through the Airbnb website. *Id.* ¶ 41. We disagreed, noting that the plaintiff's acceptance of reservations and her receipt of payments online "does not change the fact that the 'business' at issue is the actual use of the unit itself, which necessarily occurs 'on the Property.' " *Id.*

¶ 34    Accordingly, we affirmed the dismissal order, finding that section 11(b) prohibited the plaintiff's short-term Airbnb rental of her unit. *Id.* ¶ 52.

¶ 35    Although *Wood* involved the interpretation of a condominium declaration instead of a zoning ordinance, our holding in *Wood* provides guidance here in determining whether plaintiffs' short-term vacation rentals of the Property in the R1 district are a commercial/business use or a residential use. Consistent with *Wood* (and our discussion therein regarding the plain and ordinary

- 11 -

meaning of the term "business"), we hold that plaintiffs' short-term vacation rentals of the Property through Vrbo constituted a vacation rental business or commercial activity in which plaintiffs provided their renters with a service and a product—use of the Property for residential occupancy—in exchange for payment. In other words, the Property was used by plaintiffs and their renters in two different ways. The renters were using the Property as overnight accommodations. Plaintiffs were using the Property as a business in which they received money in exchange for the provision of those overnight accommodations.

¶ 36    However, under section 5-5-2, the only business or commercial use of residential property allowable in the R1 district are certain "home occupations" defined in section 5-3-4(D). Barrington Hills Village Code § 5-5-2 (amended Dec. 7, 2016); Barrington Hills Village Code § 5-3-4(D) (amended Oct. 28, 2019). As defined in section 5-3-4(D)(2), allowable " home occupations" are those lawful businesses or trades conducted from a principal building in a residential district that are "conducted for gain or support by a full time occupant of a dwelling unit," "incidental and secondary to the principal use of such dwelling unit for residential occupancy purposes," and "[do] not change the essential residential character of such dwelling unit or the surrounding neighborhood." Barrington Hills Village Code § 5-3-4(D)(2) (amended Oct. 28, 2019).

¶ 37    Section 5-3-4(D) further sets forth "the intent of this subsection to regulate the operation of a home occupation so that the general public will be unaware of its existence." *Id.* § 5-3-4(D). A home occupation must not "give an outward appearance nor manifest characteristics of a business which would infringe upon the right of neighboring residents to enjoy the peaceful occupancy of their dwelling units or infringe upon or change the intent or character of the residential district." *Id.*

¶ 38    Here, plaintiffs' vacation rental business did not constitute a permissible home occupation in the R1 district under sections 5-5-2 and 5-3-4 for two reasons. First, a permissible home occupation must be conducted by a full-time occupant of a dwelling unit. However, plaintiffs were not full-time occupants of the Property when conducting their vacation rental business, *i.e.*, they did not occupy the Property when renting it out but instead allowed the renters to have complete and exclusive use of the Property during the rental period.

¶ 39    Second, a permissible home occupation must be conducted in such a manner as not to give an outward appearance of a business so that the general public will be unaware of its existence. However, plaintiffs explicitly made the general public aware of the existence of their vacation rental business, as they listed the Property as a vacation rental on Vrbo. Plaintiffs also allowed renters to park their vehicles in the driveway during the rental periods and to come and go from the Property by means of a keypad on the door with an access code, thereby giving an outward appearance of the vacation rental business that they were conducting in violation of sections 5-3-4 and 5-5-2.

¶ 40    In addition to violating sections 5-3-4 and 5-5-2, plaintiffs' vacation rental business in the R1 district does not comport with the overall intent of the Zoning Code as set forth in section 5-1-2. Barrington Hills Village Code § 5-1-2 (amended Dec. 18, 1972). Section 5-1-2 explains the "intent and purpose" of the Zoning Code is to promote and protect the public health, safety, convenience, and the general welfare of the people; to prevent congestion and overcrowding of land; and to prevent harmful encroachment of residential areas by incompatible and inappropriate uses. *Id.* § 5-1-2(A), (C)-(E). The vacation rental business conducted by plaintiffs in the R1 district runs counter to the Village's intent to prevent harmful encroachment of residential areas by incompatible uses, as plaintiffs are providing services (the overnight lodging of paying guests)

very similar to those provided by hotels and lodging houses that are deemed an incompatible use in the R1 district and are only allowed in the B-4 district.

¶ 41     We also note that the hearing officer found that the services provided by plaintiffs' vacation rental business were not merely *similar* to the services provided by a lodging house but that plaintiffs effectively transformed the Property *into* a lodging house for purposes of the Zoning Code. Plaintiffs dispute the hearing officer's finding, arguing (as discussed earlier in this opinion) that their use of the Property as a vacation rental business does not meet the definition of a lodging house as provided for in the IBC and adopted by the Zoning Code. The Village responds that the IBC is inapplicable here because this case does not involve any building code regulations and that plaintiffs' use of the Property as a vacation rental business meets the dictionary definition of a lodging house. We need not resolve this issue. Regardless of the applicability of the IBC or whether plaintiffs' use of the Property for a vacation rental business meets either the IBC or dictionary definition of a "lodging house," the services provided by plaintiffs (overnight lodging for paying guests) are so similar to the services provided by a lodging house as to fall outside the permitted use in the R1 district. See *Younge*, 338 Ill. App. 3d at 530 (we may affirm on any basis in the record).

¶ 42     For all the foregoing reasons, we find that the hearing officer did not err in finding that plaintiffs' rentals of the Property through Vrbo were not permitted uses in the R1 district and in fining plaintiffs a total of $32,250[2] and ordering them to immediately cease such rentals.

¶ 43     Plaintiffs next argue that the Village appears to read the Zoning Code as prohibiting all short-term leasing of properties situated in the R1 district, while permitting long-term leasing.

---

[2]Plaintiffs make no argument that the hearing officer erred in the computation of the fines for each Zoning Code violation.

Plaintiffs contend that if the Zoning Code prohibits only short-term leasing of properties in the R1 district, such a prohibition is too vague to satisfy the requirements of the due process clause because the Zoning Code fails to define the duration of time constituting a short-term lease.

¶ 44    Plaintiffs' argument amounts to a facial challenge to the Zoning Code on vagueness grounds, which is impermissible here in the absence of any first amendment implications. See *Shachter v. City of Chicago*, 2011 IL App (1st) 103582, ¶ 83 (where an ordinance does not implicate first amendment rights, the plaintiff can only argue that it is vague as applied to himself).

¶ 45    For all the foregoing reasons, we affirm the circuit court.

¶ 46    Affirmed.

---

**No. 1-21-0888**

---

| | |
|---|---|
| **Cite as:** | *Wortham v. Village of Barrington Hills*, 2022 IL App (1st) 210888 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, Nos. 20-CH-06818, 21-M-371; the Hon. Martin C. Kelley, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Matthew M. Vasconcellos, of Vasconcellos Law Group LLC, of Chicago, for appellants. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Sean Conway, Bond, Dickson & Conway, of Wheaton, for appellee. |

---