**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240675-U

Order filed November 13, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| TOMAX TREE SERVICE, LLC, an Illinois limited liability company, TJ REAL ESTATE, LLC, an Illinois limited liability company, and THOMAS JUNG, an individual, | ) ) ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiffs | ) ) | |
| (Tomax Tree Service, LLC, and TJ Real Estate, LLC, Plaintiffs-Appellants), | ) ) ) | |
| v. | ) ) ) | Appeal No. 3-24-0675 Circuit No. 24-MR-60 |
| VILLAGE OF WESTMONT, an Illinois Municipal Corporation, and VILLAGE OF WESTMONT ADMINISTRATIVE CODE HEARING SYSTEM, an agency of the Village of Westmont, | ) ) ) ) ) ) | Honorable Bryan S. Chapman, |
| Defendants-Appellees. | ) | Judge, Presiding. |

_____

JUSTICE DAVENPORT delivered the judgment of the court.
Presiding Justice Brennan and Justice Holdridge concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*: The hearing officer erred in finding a tree service business violated local ordinances when (1) the principal use was permitted, (2) off-street parking was allowed as an

accessory use, and (3) the Village established the weight, but not capacity, of the tree service's vehicles. Reversed.

¶ 2    Plaintiffs, Tomax Tree Service, LLC, and TJ Real Estate, LLC, filed a complaint seeking administrative review of the decision of the Village of Westmont Administrative Code Hearing System finding Tomax violated three local ordinances and issuing a $150,000 fine. The circuit court affirmed the hearing officer's decision, and Tomax appeals. We reverse.

¶ 3                                I. BACKGROUND

¶ 4    Thomas Jung owns and operates Tomax (and TJ Real Estate[1]) from property in Westmont's B-2 General Business District. Tomax has occupied the property since 2018, and Jung has owned the property since 2021. The property consists of one building with a yard completely enclosed by a fence.

¶ 5    In August 2022, the Village issued a citation to Jung and Tomax. This citation alleged (1) Tomax was conducting business, servicing, storing, or processing outside of a completely enclosed building in violation of Westmont Code of Ordinances (Code) § 7.02(B) (amended Dec. 6, 2010), (2) Tomax was parking trucks or commercial vehicles on the property in violation of Westmont Code of Ordinances § 7.02(D) (amended Dec. 6, 2010), and (3) Tomax was operating an unpermitted zoning use (a landscape/tree service business with outdoor storage) in the B-2 Zoning District in violation of Westmont Code of Ordinances § 7.03 (amended Dec. 17, 2020). The administrative hearing took place over four days in February, March, and April 2023.

¶ 6    Jung testified that Tomax plants, removes, trims, and prunes trees, in addition to performing clearing services. It employs at least one certified arborist. According to Jung, Tomax is not a landscaping business. Rather, it is more akin to a demolition, farming, or construction

---

[1]TJ Real Estate was not named in any citation in this appeal.

business. Tomax sells goods, but it does not store large amounts of inventory or supplies on the property. Jung stated, "We provide services and sell goods as needed." Tomax invented a specialized harness and sold some to local tree contractors, with the goal to eventually sell the harnesses in bulk. Tomax has four or five trucks that the State considers commercial vehicles with a license plate classification of "E or higher." Trucks, trailers, and equipment are stored within the fenced yard. Jung bought the property from Spunder Metals. Before Spunder Metals, the property hosted an excavator, a construction company, a metal recycling dump plant shop, and a gas station. According to aerial photographs that were admitted into evidence, various trucks parked on the property from 1956 to the present.

¶ 7    Joe Hennerfeind, the deputy director of community development for planning at the Village, testified the most analogous use he could find to Tomax's business was a "landscape contractor's office," which is a permitted use in the M-1 District, but not the B-2 District. Tomax does not fit the "contractor's retail shop" use category, however, because Tomax is not retailing anything out of the space, and it exclusively sells services that it performs off-site. He did not explain how he obtained knowledge that Tomax was not retailing anything. Hennerfeind opined the outdoor storage of commercial trucks and equipment violates section 7.02(B). Spunder Metals operated from the property before Tomax. In 1981, Spunder Metals obtained a special use permit to operate non-ferrous recycling on the property. He opined the special use approval for Spunder Metals terminated because (1) Spunder Metals ceased operating from the property for at least 365 days, (2) Tomax's principal use does not constitute a continuation of Spunder Metals's special use, and (3) Tomax's parking or storage of commercial vehicles and equipment does not constitute a continuation of the special use approvals granted to Spunder Metals.

3

¶ 8 Joey Jeraminas, the Village code enforcement officer, testified he observed commercial trucks, trailers, and a cherry picker parked on the property. The commercial vehicles had license plates classed as VJ or H. Jeraminas did not observe any business being conducted outdoors other than the vehicles entering or leaving the property as he was passing by. He did not see any lawn mowers or items distinct to a landscaping business.

¶ 9 Jason Vitell, the Village building commissioner, testified he observed commercial trucks parked on the property. According to Vitell, if a specific business use is not listed in section 7.03 as either a permitted or special use, then it is not allowed in the zoning district, and section 7.03 does not list a tree service business. He also testified that "capacity" as used in section 7.02(D) refers to the combined curb weight and load weight that a vehicle can sustain.

¶ 10 Joe Sacco testified he was a resident of Westmont for 59 years. In that time, there have been very few modifications to the property. In the past, trucks would park overnight on the property, using it as a rest area.

¶ 11 Steven Watson, former Village building inspector, testified he observed semi-trucks on the property from 1994 to 2010.

¶ 12 In March 2023, the Village passed an ordinance deleting section 12.02(G)(2), regarding nonconforming accessory use, from its Code. Westmont Code of Ordinances § 12.02(G)(2) (amended July 6, 2009); Westmont Ordinance No. 23-044, § 2, (adopted March 23, 2023).

¶ 13 After receiving written closing arguments, the hearing officer issued his findings, decision, and order. He found Tomax violated section 7.02(B) by storing commercial vehicles and equipment on the property outside of an enclosed building, and no exceptions applied. He found Tomax's tree service business, whether more analogous to a landscaping company or to arboriculture, is simply not permitted in the B-2 Zoning District as a permitted, special, or

4

accessory use, in violation of section 7.03. The hearing officer also found Tomax violated section 7.02(D) because there was no dispute commercial vehicles were parked on the property on an overnight basis. Additionally, Tomax's business was not a permitted use, and therefore commercial vehicle parking was not accessory to a permitted use. Further, the State's license plate classification system using weight subsumed the concept of capacity or load. The hearing officer entered judgment for the Village in the amount of $150,000.

¶ 14    Tomax filed its complaint for administrative review in the circuit court. After a hearing, the court entered a written order affirming in all respects the administrative decision.

¶ 15    Tomax appeals.

¶ 16                                II. ANALYSIS

¶ 17    On appeal, Tomax[2] argues the hearing officer (1) erred in finding Tomax's business use was not permitted, (2) erred in finding Tomax's outdoor activities violated section 7.02(B), (3) erred in finding Tomax violated section 7.02(D) when it used weight to determine capacity, (4) erred in refusing to apply section 12.02(G)(2) in effect at the start of the hearing to evaluate nonconforming accessory use, (5) violated Tomax's substantive and procedural due process rights, and (6) illegally enhanced fines. We address each issue in turn.

¶ 18                            A. Standard of Review

¶ 19    Tomax seeks review of the hearing officer's decision pursuant to the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2022)). In such cases, we review the hearing officer's decision, not the circuit court's ruling. *FLM Enterprises, LLC v. Peoria County Zoning*

---

[2]We note the Village agreed to dismiss Jung individually, but it was not reflected in the hearing officer's order. The circuit court dismissed Jung in his individual capacity as a party and found he could not be held individually liable. We agree and further note Jung in his individual capacity is not a party to this appeal.

*Board of Appeals*, 2020 IL App (3d) 180634, ¶ 22. The applicable standard of review, which determines the deference we afford the hearing officer's decision, depends on whether the question presented is a question of fact, a question of law, or a mixed question of law and fact. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 532 (2006). "A question of fact is reviewed under the manifest weight of the evidence standard, which asks whether the opposite conclusion is clearly apparent, and a question of law is reviewed *de novo*." *FLM Enterprises*, 2020 IL App (3d) 180634, ¶ 22. A mixed question of law and fact is reviewed under the clearly erroneous standard, and a decision is clearly erroneous "where the reviewing court, on the entire record, is 'left with the definite and firm conviction that a mistake has been committed.' " *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395 (2001) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). Under any standard of review, "a plaintiff to an administrative proceeding bears the burden of proof, and relief will be denied if he or she fails to sustain that burden." *Marconi*, 225 Ill. 2d at 532-33.

¶ 20                    B. Permitted and Special Uses in Business Districts

¶ 21          Tomax argues the hearing officer's finding that Tomax has no retail component contradicts the finding that it sells services and goods used in those services. It further argues the hearing officer's finding that it is not a contractor's retail shop or a contractor's shop is clearly erroneous. The Village argues this court should give substantial weight and deference to its interpretation of its own ordinances. According to the Village, a tree service business is not listed as a permitted or special use in the B-2 District, and outdoor storage of commercial vehicles is not an allowable accessory use. This issue presents a mixed question of law and fact we review under the clearly erroneous standard. *AFM Messenger Service*, 198 Ill. 2d at 395.

¶ 22        Section 7.03 contains a table of more than 130 permitted and special uses in the B-1 and B-2 Business Districts. Westmont Code of Ordinances § 7.03 (amended Dec. 17, 2020). "Contractor's retail shops" is listed as a permitted use in the B-2 District. *Id.* The table also states off-street parking and loading, regulated in article X, is a permitted accessory use in the B-2 District. *Id.* Tomax asserts that "contractor's shops" are also permitted uses, as a 1988 ordinance identified "contractor's shops" as a permitted use, and there was no ordinance deleting the specific use from section 7.03.

¶ 23        We agree that "contractor's shop" was not properly removed from section 7.03 uses for the B-2 District, as there was no ordinance deleting or amending the particular use. Only an ordinance can amend a zoning ordinance. 65 ILCS 5/11-13-14 (West 2022). We find Tomax operates a "contractor's shop," which is a permitted use. However, even if the reference to "contractor's shop" was properly removed, we find Tomax's use is a "contractor's retail shop" as permitted by section 7.03.

¶ 24        The rules of construction that apply to statutes apply equally to municipal ordinances. *Chicago Title & Trust Co. v. Village of Inverness*, 315 Ill. App. 3d 1100, 1105 (2000). "In interpreting a municipal ordinance, courts give effect to the intent of the municipality as shown by the plain and ordinary language of the ordinance." *McGrath v. City of Kankakee*, 2016 IL App (3d) 140523, ¶ 21. "If the language of an ordinance is clear and unambiguous, the court must interpret it according to its terms." *Id.* "To divine a term's ordinary meaning, 'it is entirely appropriate to employ a dictionary,' which provides a reasonable proxy for how an ordinary person would interpret the law's various words and phrases." *Sullivan v. Village of Glenview*, 2020 IL App (1st) 200142, ¶ 29 (citing *People v. McChriston*, 2014 IL 115310, ¶ 15).

¶ 25      "Effect should be given to the intention of the drafters by concentrating on the terminology, its goals and purposes, the natural import of the words used in common and accepted usage, the setting in which they are employed, and the general structure of the ordinance." *Zebulon Enterprises, Inc. v. Du Page County*, 146 Ill. App. 3d 515, 518 (1986). The Code specifies the type of establishments intended for the business districts. "All business establishments in the various business districts are intended to be retail trade or service establishments dealing directly with consumers." Westmont Code of Ordinances § 7.01 (adopted February 5, 2007). However, the ordinance does not define "contractor" as used in "contractor's retail shop." Nor does the ordinance define "retail shop."

¶ 26      A contractor is "one who contracts to do work for or supply goods to another." Black's Law Dictionary (12th ed. 2024). Tomax is a contractor because it contracts to do work, primarily in tree removal, cutting, servicing, safety trimming and maintenance. Tomax operates a "contractor's shop" from which it contracts its services and sells equipment relating to these services. It is, therefore, a retail service establishment as intended by the Code.

¶ 27      The Village argues the maxim *expressio unius est exclusio alterius,* or expressing one thing excludes another, applies here, and because a tree service business or landscaping contractor is not specifically listed in the section 7.03 use list, Tomax's use is not permitted on the property. We disagree.

¶ 28      First, "[w]hile reviewing courts accord substantial deference to the interpretation placed on a statute by the agency charged with its administration and enforcement, the agency's interpretation will be rejected if it is unreasonable or erroneous." *City of St. Charles v. Illinois Labor Relations Board*, 395 Ill. App. 3d 507, 511 (2009). According to the Village's interpretation, any contractor retail shop providing a specific service that is not listed in section 7.03 cannot

8

operate in the B-1 or B-2 districts. This then makes the specific category of "contractor's retail shop" redundant. Terms in an ordinance should not be rendered superfluous. See *Chicago Title*, 315 Ill. App. 3d at 1106. Instead, "contractor's retail shops" appears instead to be a catchall, as it is impossible to list the innumerable types of contractors.

¶ 29 Second, the maxim *expressio unius est exclusio alterius* "is merely a rule used to help courts ascertain the intent of the legislature; it is not a rule of law." *People ex rel. Klaeren v. Village of Lisle*, 316 Ill. App. 3d 770, 781 (2000). We are therefore not bound to the maxim and are not required to apply it.

¶ 30 Third, there was no evidence to suggest Tomax was operating as a landscape company, which was only a permitted use in the M-1 District. There were no lawn mowers, fertilizer, or other items commonly associated with landscaping. Instead, Tomax operates a highly specialized business relating to safely trimming and removing trees, not general landscaping.

¶ 31 Upon review of the record, we are left with the "firm conviction that a mistake has been committed." See *AFM Messenger Service*, 198 Ill. 2d at 395 (2001). We find, therefore, because Tomax operates as a contractor's shop, which is a permitted use, the hearing officer's ruling was clearly erroneous.

¶ 32                                C. Enclosure of Operations

¶ 33 Tomax argues the hearing officer did not address exceptions for off-street parking and loading, which have always been an obvious accessory use, and further argues that parking or loading cannot be considered storage. The Village contends this argument ignores the plain language of section 10.06(A) of the zoning ordinance, which limits off-street parking to the automobiles of patrons, occupants, or employees, and section 10.07(F), which prohibits the use of

a loading space for parking. This issue presents a mixed question of law and fact we review under the clearly erroneous standard. *AFM Messenger Service*, 198 Ill. 2d at 395.

¶ 34 According to section 7.02(B), "All business, servicing, storage or processing shall be conducted within completely enclosed buildings except: (1) Off-street parking or loading[.]" Westmont Code of Ordinances § 7.02(B) (amended Dec. 6, 2010). Article XIV of the zoning ordinance defines "garage, storage, or off-street parking" as "[a] building or portion thereof designed or used, or land used exclusively for storage of motor vehicles, and in which motor fuels and oils are not sold, and motor vehicles are not equipped, repaired, hired or sold." *Id.*, Appendix A, Art. XIV (amended April 21, 2022). The Code further states, "[n]othing in this ordinance shall be deemed to prevent the voluntary establishment of off-street parking and loading facilities to serve any existing use of land or buildings." *Id.* § 10.03 (adopted February 5, 2001).

¶ 35 "Off-street parking facilities required as accessory to uses listed [in the Code] shall be solely for the parking of automobiles of patrons, *occupants* or employees." (Emphasis added.) *Id.* § 10.06(A) (amended December 17, 2020). "Off-street parking spaces, *** open to the sky, may be located in any yard" with exceptions. *Id.* § 10.06(G) (amended December 17, 2020). Off-street parking areas must be screened by a fence or a wall. *Id.* § 10.06(H)(3) (amended December 17, 2020). Storage is not permitted in loading spaces. *Id.* § 10.07(E) (adopted June 4, 2007). The same space cannot be allocated for both off-street loading and off-street parking. *Id.* § 10.07(F) (adopted June 4, 2007).

¶ 36 An "occupant" is "someone who has possessory rights in, or control over, certain property or premises" or "someone who is rightfully present on certain property or premises[.]" Black's Law Dictionary (12th ed. 2024). Jung owns the property and Tomax operates a permitted use from the property as a contractor's shop. Tomax is therefore an occupant of the property. Moreover, the

10

Code specifically allows for off-street parking in yards. Tomax's yard is fenced in, as required by the Code. Tomax uses the yard to park its commercial vehicles, not for any other business, servicing, storage, or processing. The Village itself ignores the plain language of section 10.06(A), which permits off-street parking as an accessory use if used for the parking of occupants' vehicles. Tomax is an occupant of the property, and therefore its off-street parking is allowed. The hearing officer's ruling that Tomax violated section 7.02(B) is clearly erroneous.

¶ 37                                    D. Parking Limitations

¶ 38        Tomax argues the hearing officer erred in applying weight, not capacity, of the vehicles when it found Tomax violated section 7.02(D). The Village argues reference to "capacity" in the Code is unnecessary and superfluous due to the use of the term "commercial vehicle." This issue presents a mixed question of law and fact and is reviewed under the clearly erroneous standard. *AFM Messenger Service*, 198 Ill. 2d at 395.

¶ 39        According to section 7.02(D), "Parking of trucks or commercial vehicles in excess of one hour when accessory to the conduct of a permitted use shall be limited to trucks or commercial vehicles having capacity of less than 1½ tons, except for pickup or delivery services during normal business hours." Westmont Code of Ordinances § 7.02(D) (amended Dec. 6, 2010). The ordinance does not define "capacity." Black's Law Dictionary defines "capacity" as "[t]he amount of something that a factory, company, machine, etc. can produce or deal with" or "[t]he size or power of something, such as an engine." Black's Law Dictionary 257 (11th ed. 2019). Merriam-Webster's Collegiate Dictionary defines "capacity" as "the potential or suitability for holding, storing, or accommodating" or "the maximum amount or number that can be contained or accommodated[.]" Merriam-Webster's Collegiate Dictionary 182 (11th ed. 2020). Without a precise definition set forth in the ordinance, there are numerous potential definitions of "capacity."

¶ 40      But the dictionary definitions of capacity do not include weight. A vehicle's license plate class is dependent on the vehicle's gross weight in pounds, including the vehicle and its maximum load. See 625 ILCS 5/3-815 (West 2022). At the hearing, the Village did not present evidence regarding the capacity of Tomax's vehicles. Instead, it presented evidence regarding gross weight. Jeraminas testified the license plates were classified as VJ or H, meaning the gross weight, including vehicle and maximum load, ranges from 16,001 to 28,000 pounds. See *id.* But this is not capacity, regardless of what definition is used. Moreover, the average car weighs more than 1½ tons, so if "capacity" meant "weight," no vehicle could park in the yard intended for off-street parking. See *Harris Trust & Savings Bank v. American National Bank & Trust Co. of Chicago*, 230 Ill. App. 3d 591, 597 (1992) ("A court may take judicial notice of matters of common knowledge, or of facts which, while not generally known, are easily verifiable.").

¶ 41      Lastly, the Village's argument that the term "capacity" is superfluous is unavailing. Although the term is not defined, we will not construe the ordinance to render the term meaningless. See *Chicago Title*, 315 Ill. App. 3d at 1106 ("An ordinance should be construed, if possible, so that no term is rendered superfluous or meaningless."). The use of the term "commercial vehicle" in the ordinance distinguishes it from "personal vehicle," but it neither defines nor replaces the term "capacity."

¶ 42      The hearing officer's finding that Tomax violated section 7.02(D) is clearly erroneous.

¶ 43                                    E. Nonconforming Uses

¶ 44      Tomax argues the hearing officer erred by ignoring section 12.02(G)(2) in effect at the start of the hearing. Specifically, Tomax alleges the hearing officer applied the new ordinance after the Village rushed through the deletion of section 12.02(G)(2) in the middle of the hearing, with the sole purpose of eliminating Tomax's vested rights in lawful nonconforming accessory uses. The

Village asserts it never sought to apply the amended ordinance during the hearing and, furthermore, there is no reasonable basis to construe Tomax's use of the property as a continuation of a legal, nonconforming use.

¶ 45     On review of the record, we note the hearing officer was not informed of the amended ordinance until after the hearing concluded. While we agree the Village did not seek to apply the newly amended ordinance during the hearing, the hearing officer failed to address section 12.02(G)(2) in its ruling.

¶ 46     According to section 12.02(G)(2)(b), nonconforming use of land accessory to a conforming structure may continue as long as the structure remains a conforming use, but outdoor use of land must be screened by a fence. Westmont Code of Ordinances § 12.02(G)(2) (amended July 6, 2009). This section is relevant to Tomax's accessory use of the yard for parking its commercial vehicles. However, this section requires (1) a nonconforming use, (2) a conforming structure, and (3) a fenced yard. The conforming structure and fenced yard are not in dispute. At issue is whether Tomax's use of the yard for parking is a nonconforming use. We find it is not a nonconforming use.

¶ 47     We have already found Tomax's principal use of the property is permitted as a contractor's shop. We have also found section 7.02(B) allows for off-street parking, and at the hearing, the Village did not establish Tomax's vehicles were over capacity under section 7.02(D). Based on the evidence presented, off-street parking in the yard is not a nonconforming use, and therefore we need not address whether section 12.02(G)(2) applies.

¶ 48                              F. Due Process Violations and Fines

¶ 49     We decline to address Tomax's argument regarding due process violations. In its brief, Tomax does not specify how its due process rights were violated beyond restating its arguments.

Points not argued are forfeited, and we therefore decline to address this issue. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). A separate case is pending in the circuit court alleging a procedural due process violation occurred when the Village amended section 12.02(G)(2) in March 2023.

¶ 50        Finally, because Tomax did not violate Village ordinances, we vacate the fines assessed by the hearing officer and need not address the claim that they were excessive.

¶ 51                        III. CONCLUSION

¶ 52        The judgment of the circuit court of Du Page County is reversed.

¶ 53        Reversed.