In the

# United States Court of Appeals
## For the Seventh Circuit

No. 23-2974

FULL CIRCLE VILLAGEBROOK GP, LLC,

*Plaintiff-Appellant,*

*v.*

PROTECH 2004-D, LLC, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:20-cv-07713 — **Mary M. Rowland**, *Judge.*

ARGUED SEPTEMBER 6, 2024 — DECIDED OCTOBER 16, 2024

Before RIPPLE, SCUDDER, and ST. EVE, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Invoking the diversity jurisdiction of the district court,[1] Full Circle Villagebrook GP, LLC ("Full Circle") brought this action against Protech 2004-D, LLC ("Protech") and AMTAX Holdings 436, LLC ("AMTAX") (referred to collectively as "Limited Partners"), as well as Alden

---

[1] *See* 28 U.S.C. § 1332(a)(1).

Torch Financial, LLC ("Alden" or "Alden Torch"). The complaint set forth claims under Illinois law, alleging a breach of contract and tortious interference with a contractual relationship. In due course, the district court granted Limited Partners' and Alden's motion for summary judgment. Full Circle filed a timely notice of appeal.[2]

We now affirm the district court's judgment. That court correctly held that the contract gave Full Circle no right to select, unilaterally, an appraiser from the list of successors to the two entities whose lists had been agreed upon.

## BACKGROUND

In 2005, Full Circle formed a partnership with Protech and AMTAX. Full Circle was the General Partner, while Protech and AMTAX were, respectively, the Special Limited Partner and the Investor Limited Partner. The partnership was formed to develop, own, and operate a large affordable housing project in Carol Springs, Illinois. Alden Torch is a private equity group; it now controls the Limited Partners. The partnership is governed by a contract that the parties refer to as the Second Amended and Restated Agreement of Limited Partnership ("LPA"). The parties agree that the contract should be interpreted under the law of Illinois.[3]

The parties also agree that the partnership was created to take advantage of the Low-Income Housing Tax Credit ("LIHTC"),[4] which incentivizes private sector entities to

---

[2] Our jurisdiction is secure under 28 U.S.C. § 1291.

[3] The parties agree that Illinois law governs their agreement. R.1 ¶ 39; R.31 at 2.

[4] 26 U.S.C. § 42.

invest in low-income housing. This partnership agreement is typical of arrangements utilized under the program: Limited Partners provide capital in exchange for tax credits, while the general partners are the developers on the project. The general partners typically have a small ownership stake but receive fees and cash flow from the property. These LIHTC arrangements usually include an option under which the general partner can buy out the limited partners fifteen years into the project, at the end of the Compliance Period.[5]

Here, Full Circle holds an ownership stake of only .001% but has an option to purchase the interests of the Limited Partners based on the fair market value of the property. To determine that value, the option provision specifies that:

> The General Partner shall select one appraiser from LaSalle Bank National Association's or Deutsche Bank Berkshire Mortgage's approved list. … If, however Deutsche Bank Berkshire Mortgage or LaSalle Bank National Association do not have an approved list, the General Partner may select an appraiser subject to the approval of the Investor Limited Partner, provided such approval shall not be unreasonably withheld.

---

[5] The LIHTC has a fifteen-year Compliance Period, after which all of the tax credits have been earned and the Limited Partners have little to gain from the agreement. *See* 26 U.S.C. § 42(i)(1). To facilitate the long-term survival of the low-income housing developments, these contractual arrangements usually have buy-out provisions, allowing the Limited Partners to exit once the project is no longer financially valuable to them and helping to ensure the project remains affordable housing. *SunAmerica Hous. Fund 1050 v. Pathway of Pontiac, Inc.*, 33 F.4th 872, 875 (6th Cir. 2022).

On November 4, 2020, Full Circle sent the Limited Partners a letter informing them that it would exercise the option on the basis of an appraisal from Newmark Knight Frank Valuation & Advisory, LLC ("NFK"). Full Circle claimed that NFK was on the approved lists of LaSalle Bank and Deutsche Bank Berkshire Mortgage ("DBBM"). At that time, however, neither LaSalle Bank nor DBBM continued to exist because each had merged with another banking institution. Full Circle nevertheless justified its use of the NFK appraisal because that firm was on the "approved lists" of the successor banks to LaSalle Bank and DBBM.[6] The Limited Partners believed, however, that this selection did not comply with the contract terms and therefore refused to recognize the exercise of the option.

On December 23, 2020, Full Circle commenced this litigation by filing a complaint in the United States District Court for the Northern District of Illinois. This complaint set forth two substantive claims. First, it brought a breach of contract claim against the Limited Partners, alleging that the Limited Partners, "as managed and controlled by Alden Torch," had "failed to facilitate the sale of the LP interests to the General Partner upon the General Partner's valid exercise of the Option" (¶ 123). Full Circle also asserted a tortious interference with contract claim.

---

[6] NFK informed Full Circle that it was "on the approved appraiser list for both Newmark Capital Markets (previously DB Berkshire Mortgage- previously Berkeley Point) and Bank of America (previously LaSalle Bank N.A.)." R.167 at 1.

On January 13, 2023, Full Circle filed a partial motion for summary judgment, seeking specific performance of the option; the Limited Partners also filed for summary judgment. The district court granted the Limited Partners' motion for summary judgment. The court noted that there was no dispute that the LPA was a valid and enforceable contract. Furthermore, continued the court, providing for a valuation by an entity from specific lists is a condition precedent for the exercise of the option. Option provisions and conditions precedent, said the court, are both strictly construed under Illinois law. The court then held that the option clause, including its condition precedent, was unambiguous and that Full Circle had not complied with the terms of the condition precedent. More concretely, Full Circle did not select its appraiser from the lists of LaSalle Bank or DBBM, and the terms of the option do not permit unilateral selection from the list of a successor bank. The court therefore denied specific performance of the option. The district court went on to deny Full Circle's tortious interference claim against Alden. The court reasoned that such a claim requires a binding contract and, because Full Circle did not comply with the condition precedent, there was no binding contract.

## DISCUSSION

We begin our analysis by setting forth the position of each party. In seeking reversal of the district court's judgment, Full Circle submits that the Limited Partners breached the contract by failing to recognize that Full Circle had exercised validly its option. As Full Circle sees the matter, it properly exercised its option by obtaining an appraiser from the approved lists of successors to the named banks. In its view, the contract's naming of specific banks should be interpreted to include any

successors of those banks. Full Circle emphasizes that the goal of the contracting parties was to facilitate the Limited Partners' orderly exit from the partnership. Using the lists of the institutions resulting from the mergers of the entities named in the contract fosters that goal and therefore best fulfills the intent of the parties.

In urging affirmance, the Limited Partners maintain that they are not in breach of the LPA; Full Circle failed to comply with the condition precedent in the option and therefore they were not bound to perform. They ask that we focus on the wording of the contractual provision: it names two, and only two, banks. Full Circle therefore could have exercised its option unilaterally only by engaging the services of an appraiser listed by one of those two named banks. When Full Circle exercised its option, the named banks had undergone mergers, and no longer existed. The successor banks are new institutions, and the plain language of the contract does not permit substitution of an appraiser from the successor institutions' lists. Rather, the contract explicitly required Full Circle to select an appraiser through the other method set forth in the contract; it had to seek the Investor Limited Partner's (AMTAX) consent in choosing an appraiser.

Our resolution of this dispute requires, as the parties acknowledge, the application of substantive state law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). As is evident in its careful review of the applicable principles of Illinois contract law, the district court recognized its concomitant responsibility, shared with the Illinois courts, to ensure the integrity of state law. The "principles of a cooperative judicial federalism" require no less. *See Salve Regina Coll. v. Russell*, 499 U.S.

225, 239 (1991).[7] We, of course, share that responsibility. *See id.* at 227, 234.

The district court correctly determined that a breach of contract claim requires the existence of a valid and enforceable contract, performance by the plaintiff, a breach by the defendant, and a resulting injury to the plaintiff. *See Henderson-Smith & Assocs., Inc. v. Nahamani Fam. Serv. Ctr., Inc.*, 752 N.E.2d 33, 43 (Ill. App. Ct. 2001). A material breach of contract by a party will excuse performance by the other party. *See Costello v. Grundon*, 651 F.3d 614, 640 (7th Cir. 2011). Conditions precedent and options are generally subject to strict compliance under Illinois contract law. *See MXL Indus., Inc. v. Mulder*, 623 N.E.2d 369, 375 (Ill. App. Ct. 1993); *Wentcher v. Busby*, 424 N.E.2d 651, 655 (Ill. App. Ct. 1981). More fundamentally, the district court recognized that, in fulfilling its task of contract interpretation, its "primary objective is to give effect to the intention of the parties." *Thompson v. Gordon*, 948 N.E.2d 39, 47 (Ill. 2011). It achieves this objective by first focusing on the language of the contract, considering the contract as a whole, and not just its provisions in isolation. *See id.* If the language is unambiguous, meaning it is not susceptible to more than one meaning, the words must be given their "plain, ordinary and popular meaning." *Id.*; *see also ConFold Pac., Inc. v. Polaris Indus., Inc.*, 433 F.3d 952, 955 (7th Cir. 2006).

Following this paradigm, the district court first noted that "[t]he LPA refers plainly and specifically to 'LaSalle Bank National Association's or Deutsche Bank Berkshire Mortgage's

---

[7] *Cf.* Paul D. Carrington, *A New Confederacy? Disunionism in the Federal Courts,* 45 Duke L.J. 929, 936 (1996).

approved list.'"[8] It further noted that there is no reference to successor banks, a reference that the parties easily could have included. Therefore, concluded the district court, the plain language of the contract only refers to the lists of the two named banks. Adhering to the maxim that it must consider the contractual language as a whole, the court also noted that the text included an alternative method for selecting an appraiser when the two banks explicitly mentioned in the contract do not have an approved list. The district court therefore decided that the contract's terms were unambiguous and must be enforced as written; only the lists of the two named banks, and not their successors, could be employed by Full Circle in naming, unilaterally, an appraiser.

Illinois recognizes the maxim that "a contract will not be interpreted literally if doing so would produce absurd results, in the sense of results that the parties, presumed to be rational persons pursuing rational ends, are very unlikely to have agreed to seek." *Beanstalk Grp., Inc. v. AM Gen. Corp.*, 283 F.3d 856, 860 (7th Cir. 2002). But the district court's interpretation certainly does not justify the invocation of this principle. It is hardly absurd or irrational for the parties to rely only on lists from those two banks, constituted only as they were at the time of the contract's signing. As the district court reasoned, the drafters' inclusion of an alternate method of finding an appraiser establishes the parties' awareness that using lists from the two banks might not be possible. The plain language of the contract does not produce results so absurd as to warrant adding in language that the drafters quite rationally omitted. Courts "will not add terms to a contract to change

---

[8] *Full Circle Villagebrook GP, LLC v. Protech 2004-D, LLC*, No. 20-CV-07713, 2023 WL 6049925, at *5 (N.D. Ill. Sept. 15, 2023).

the plain meaning, as expressed by the parties." *Wood v. Evergreen Condo. Ass'n*, 189 N.E.3d 1045, 1053 (Ill. App. Ct. 2021) (quoting *Ritacca Laser Ctr. v. Brydges*, 100 N.E.3d 569, 575 (Ill. App. Ct. 2018)).

Because the terms of the contract did not permit a unilateral selection of an appraiser from the lists of the successor banks, and because Full Circle did not seek the approval of the Investor Limited Partner, Full Circle did not comply with the terms of the option and a contract was never formed. The district court therefore properly granted the motion for summary judgment.

### Conclusion

The judgment of the district court is affirmed.

AFFIRMED